BRIDGES, P.J.,
for the Court.
¶ 1. Shellie Elizabeth Dill was granted a divorce from Ben David Dill in the Chancery Court of Harrison County and was awarded sole legal and physical custody of the couple’s two minor children. Shortly after the divorce, Ben left the United States Marine Corps. About a month later, he found a new job, but his salary was approximately one-third of what he earned during his service in the Marine Corps. Ben subsequently filed a motion for modification. Shellie counterclaimed that Ben was in contempt of court for child support and alimony arrearages and that, because of those arrearages, he was not entitled to any relief by way of modification.
¶ 2. A hearing on the matter revealed that Ben was thousands of dollars in arrears in alimony and child support payments; however, the chancellor found that he was not in contempt. Additionally, the chancellor reduced Ben’s child support obligation to eighteen percent of his adjusted gross income, awarded him joint legal custody of both children, granted him greater rights of visitation, and awarded him the right to claim the younger of the two children for income tax purposes. The chancellor further concluded, in determining the period for which Shellie was owed back-payments, that Ben’s alimony obligation terminated upon Shellie’s cohabitation with, rather than marriage to, her fiancé at the time. Aggrieved by the chan *200 cellor’s decision, Shellie appeals and presents the following issues:
I. DID THE LOWER COURT MANIFESTLY ERR IN GRANTING A MODIFICATION DESPITE EVIDENCE OF UNCLEAN HANDS?
II. DID THE LOWER COURT MANIFESTLY ERR BY REDUCING BEN’S CHILD SUPPORT OBLIGATION ABSENT SUFFICIENT PROOF OF A MATERIAL CHANGE IN CIRCUMSTANCES?
III. DID THE LOWER COURT MANIFESTLY ERR BY DEVIATING FROM THE STATUTORY GUIDELINES WHEN CALCULATING CHILD SUPPORT?
IV. DID THE LOWER COURT MANIFESTLY ERR IN DETERMINING THAT BEN’S OBLIGATION TO PAY ALIMONY CEASED UPON COHABITATION?
¶ 8. We conclude that the first three assignments of error advanced by Shellie demand reversal and remand to the trial court for further consideration in accordance with the findings of this Court. As to the fourth and final assignment of error, however, we find that it is without merit and, accordingly, affirm the decision of the lower court as to that issue.
FACTS AND PROCEDURAL HISTORY
¶ 4. On February 20, 2003, the Chancery Court of Harrison County granted Shellie a divorce from Ben on the ground of adultery.[1] The chancellor declared in the judgment of divorce that (a) Shellie would retain sole legal and physical custody of the couple’s two children, Destiny Elizabeth Dill and Chance David Dill, subject to Ben’s rights of visitation; (b) Ben would pay Shellie $550 per month in alimony plus a one-time lump sum of $1,400, to be paid from Ben’s first paycheck following the final judgment of divorce; (c) Shellie could claim their two children for both state and federal income tax purposes; and (d) Ben would pay Shellie monthly payments of $650 in child support.
¶ 5. For the seven years that the Dills were married, Ben served in the United State Marine Corps, and while still married, Ben and Shellie discussed the prospect of Ben leaving. Ben subsequently decided, prior to their divorce, that he would leave; however, he was not officially discharged until April 20, 2003. Accordingly, when the divorce was finalized, Ben was still in the Marine Corps, where he was earning approximately $2,866 per month. About a month later, Ben found work with the Masonite Corporation in Laurel, Mississippi, but the job only paid $1,644 per month. On July 11, 2003, Ben filed a petition for modification of the divorce decree, asserting therein that, since the divorce, he has undergone a career change, which resulted in a $1,222 reduction in monthly income. Relying on this income reduction as a basis for modification, Ben asked the court to (a) reduce his monthly child support and alimony obligations; (b) enlarge his rights of visitation with the children; (c) allow him to claim the older of the two children for income tax purposes; and (d) award him a reasonable sum of money for attorney’s fees.
¶ 6. On August 5, 2003, Shellie filed her answer. Shellie argued that the clean hands doctrine prohibited the court from *201 awarding Ben any relief. Shellie also countered with a contempt claim. In her contempt claim, Shellie alleged that Ben (a) was $1,000 in arrears on child support; (b) had failed to pay $600 of attorney’s fees; and (c) was $2,200 in arrears on alimony.
¶ 7. In April of 2004, the court held a hearing on Ben’s petition for modification and on Shellie’s counterclaim of contempt. The chancellor subsequently concluded that a material change in circumstances had occurred since the date of divorce, thereby entitling Ben to a modification of the judgment of divorce. Accordingly, the chancellor held that (a) Ben would have joint legal custody of the couple’s two minor children; (b) Ben received greater rights of visitation, particularly during the summer months and holidays; (c) Ben could claim the younger of the two children for income tax purposes each and every year; (d) Shellie could retain the entire $800 from Ben’s income tax return, half of which she would apply toward any arrearages in child support and/or alimony; (e) Ben would pay Shellie $1,000 towards her attorney’s fees, followed by monthly payments of $100 until the attorney’s fees were paid in full; (f) Ben’s child support payments were reduced from $650 to $179.28 per month, the equivalent of 18% of Ben’s adjusted gross income; (g) Ben would receive a credit for any alimony paid from September 2003 through January 2004, the period during which Shellie cohabited with, and received financial assistance from, her flaneé prior their marriage; and (h) Ben was not in contempt of court but was found to be $1,100 in arrears in child support and $3,900 in arrears in alimony. Shellie now presents to this Court her challenge to said modification.
LAW AND ANALYSIS
¶ 8. In domestic relations matters, the scope of our review is limited by the substantial evidence/manifest error rule. Jundoosing v. Jundoosing, 826 So.2d 85, 88(¶ 10) (Miss.2002). Accordingly, we must refrain from disturbing a chancellor’s findings unless manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Id.
¶ 9. After thoroughly examining the record in this matter, we are convinced that the lower court manifestly erred in granting Ben’s petition for modification. Shel-lie’s first three assignments of error are directly implicated by this finding, so for clarity, we will combine them for the purposes of our discussion.
I. II. and III.
MODIFICATION OF DIVORCE ORDER
¶ 10. As previously noted, the court finalized the Dill’s divorce by judgment dated February 20, 2003, and Ben filed for a modification thereof not quite five months later, on July 11. Modification requests filed following such a brief lapse in time are inherently suspect and must be “critically scrutinized” by the courts. Magee v. Magee, 755 So.2d 1057, 1060(¶ 14) (Miss.2000); see also Morris v. Morris, 541 So.2d 1040, 1043 (Miss.1989). Without regard to lapse in time, though, a modification may still be granted if the complaining party proves that a substantial and material change in circumstances has arisen subsequent to the original decree and that said change was neither foreseeable at the time of the original decree nor caused by the willful or bad faith actions of the complaining party. Magee, 755 So.2d at 1059-60(¶ 9). In the resulting judgment of modification, entered May 18, 2004, the court declared that a material change in circumstances had arisen since the date of divorce, thereby entitling Ben to a modification; however, we disagree. The clean hands doctrine precluded a determination *202 on the merits of Ben’s petition, so the relief awarded pursuant thereto constitutes manifest error.
¶ 11. Mississippi’s chancery-courts are courts of equity, and under the clean hands doctrine, anyone that comes before “a court of equity ... must do equity as a condition of recovery.” Galloway v. Inglis, 138 Miss. 350, 359, 103 So. 147, 149 (1925); see also Billy G. Bridges & James W. Shelson, Griffith Mississippi Chancery Practice §§ 42-43 (2000 ed.). This doctrine, in effect, prevents a complainant from petitioning the court to modify an original decree absent proof that said complainant has fully performed under the terms of the original decree or, in the alternative, that full performance thereunder has been wholly impossible. Kincaid v. Kincaid, 213 Miss. 451, 456, 57 So.2d 263, 265 (1952).
¶ 12. Unquestionably, Ben had not fully performed. In the judgment of modification, the court declared that Ben was “in arrears in support obligations and alimony payments,” and Ben testified to that fact at the modification hearing. Ben, accordingly, could only satisfy the clean hands doctrine by proving that performance under the terms of the original decree was impossible, and the Mississippi Supreme Court has expressed the need to prove such impossibility “with particularity and not in general terms.” Id. (citations omitted). Irrefutably, Ben had unclean hands; however, we find that the record is devoid of comment by the lower court concerning either the clean hands doctrine or Ben’s inability to perform. Furthermore, we find no evidence to support such findings. Ben’s petition to modify is founded on nothing other than changes produced by his own decisions, i.e., leaving the Marine Corps despite knowing that a decrease in income was probable; remarrying while aware of the increased financial burden that would result from having to provide for two more children in addition to the two he had with Shellie. Accordingly, we find that Ben’s unclean hands are simply the product of his own willful refusal to pay as ordered rather than purported inability, so the modification awarded in the lower court was in error. See Bailey v. Bailey, 724 So.2d 335, 337(¶ 6) (Miss.1998); Taylor v. Taylor, 348 So.2d 1341, 1343 (Miss.1977).
¶ 13. We have little doubt that a decrease in one’s monthly income from $2,866 to $1,644 qualifies as a material and substantial change, particularly when one’s alimony and child support obligation equals $1,200. As previously observed, the question then becomes whether that change resulted from circumstances arising subsequent to the original decree or whether the parties could or should have reasonably anticipated such change at the time of the decree. The clean hands doctrine renders this issue moot under the facts of this case; however, we note that Ben clearly failed in this regard. As demonstrated in the record herein, Ben made a decision to leave the Marine Corps, and when he made that decision, he was aware that his income would decrease. At the modification hearing, Ben said “[Shellie and I] knew we were splitting up, we knew I was getting out of the Marine Corps, and I knew — everybody knew that my pay was going to decrease.” Then when Shellie was asked about Ben’s employment plans, she testified that “[h]e was getting out of the Marine Corps.” While we find no evidence, or even allegations, indicating that Ben’s decision to leave the Marine Corps was premised on bad faith, the undisputed testimony of the parties unequivocally establishes that the income reduction which followed his departure from the Marine Corps was both anticipated and foreseeable. Accordingly, Ben’s changed *203 financial situation does not warrant a modification. Furthermore, for the reasons expressed herein, Shellie’s third assignment of error, in which challenges the chancellor’s decision to deviate from the statutory guidelines, is rendered moot.
IV.
EFFECT OF COHABITATION ON ALIMONY
¶ 14. Shellie and her current husband married in January of 2004, but they began cohabiting in September of 2003. The chancellor held that Ben’s obligation to make alimony payments ceased in September, at the commencement of cohabitation, rather than the following January, at the time of marriage. We find that the chancellor was correct in calculating the amount of alimony that Ben owed Shellie in back-payments.
¶ 15. Cohabitation by the payee spouse creates a presumption that a material change in circumstances has occurred justifying termination of alimony. Scharwath v. Scharwath, 702 So.2d 1210, 1211(¶ 6) (Miss.1997). The payee spouse then bears the burden to prove no mutual support between cohabitants. Id. Shellie testified that she was receiving mutual support from her fiancé. We accordingly conclude that she failed to rebut the presumption as required.
¶ 16. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS REVERSED AND REMANDED AS TO ISSUES I, II, AND III AND AFFIRMED AS TO ISSUE IV. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND THE APPEL-LEE.
KING, C.J., LEE, P.J., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. An amended judgment of divorce was entered on March 25, 2003, wherein the court clarified inaccurate wording by replacing "child” with the plural "children.” The amended language is inconsequential to our review; therefore, the discussion we provide herein does not differentiate between the two.