GRIFFIS, P.J., for the Court:
¶ 1. This case concerns a divorced father’s nonpayment of child support and alimony. The Jackson County Chancery Court found Lance Dupre in willful contempt of court, ordered his incarceration for ninety days, terminated future alimony obligations, determined the amount of past-due and owing child support and alimony, and set terms for repayment. Lance appeals. We find no error and affirm.
FACTS
¶ 2. Lance and Pamela Dupre were married in 1984. They had two children, Lacey and Jordan Dupre. Lacey was born in 1982, and Jordan was born in 1990. During the marriage, the family resided in a house in Pascagoula, Mississippi.
¶ 3. Lance and Pamela were divorced in 2004. They entered into an agreement on the issues of child custody, child support, alimony, and property division. Their agreement was adopted by the chancellor and made part of the divorce decree.
¶ 4. Pamela was awarded full custody of Jordan.[1] Lance was to pay $1,000 a month in child support and $200 per month in permanent alimony. He also had to make the car payments on Pamela’s 2003 Chevrolet Malibu until the loan was paid off. The marital home was awarded to Lance, but Pamela could continue to live in it for six months.
115. By the time of the divorce, Lance had moved to Nashville, Tennessee, to manage a physical therapy business. That business eventually failed, and Lance became a full-time interior designer in Nashville. Meanwhile, Pamela and Jordan remained in the marital home in Pascagoula. They stayed in the home well after the six-month period specified in the divorce decree.. During that time, Lance continued to make the mortgage payments.
¶ 6. In August 2005, Hurricane Katrina hit Pascagoula and rendered the marital home unliveable. Pamela and Jordan moved to Gautier, Mississippi, to live with Pamela’s boyfriend and employer, Steve Pemberton. Jordan was very unhappy with that situation.
*1228 ¶ 7. One year later, Jordan, who was sixteen-years old at the time, moved back into the dilapidated house in Pascagoula by himself. He was able to make sufficient repairs to render one room in the house liveable. Lance provided Jordan with a stove and refrigerator and paid the mortgage and utility bills. Pamela provided Jordan with a window-unit air conditioner, made frequent trips to Pascagoula to check on him, and gave him cash for various expenses. Pamela remained in Gautier.
¶ 8. Jordan lived in the house by himself and continued to attend Pascagoula High School, until his graduation in May 2008. Thereafter, Lance quit making the mortgage payments, and the house went into foreclosure. In July 2008, Jordan moved into an apartment with a friend, and the lender foreclosed on the house.
¶ 9. Following the divorce, Lance did not abide by the terms of the divorce decree. Specifically, he did not pay the $1,000 a month in child support. He did not pay the $200 a month in alimony. And he did not make the car payments on the Malibu.
¶ 10. In September 2006, Pamela filed a petition for contempt based on Lance’s noncompliance with the divorce decree. Lance answered the petition and counterclaimed for, among other things, termination of his alimony obligation. Several continuances were granted before a bench trial was held on August 13, 2009. On September 22, 2009, the chancellor entered findings of fact and conclusions of law. It is from that judgment that Lance appeals.
STANDARD OF REVIEW
¶ 11. This Court will not disturb the findings of a chancellor when supported by substantial credible evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Sanderson v. Sanderson, 824 So.2d 623, 625-26 (¶ 8) (Miss.2002). Legal questions are reviewed de novo. Russell v. Performance Toyota, Inc., 826 So.2d 719, 721 (¶ 5) (Miss.2002).
ANALYSIS

1. Whether the chancellor gave Lance credit for the insurance settlement check.

¶ 12. According to Pamela, Lance was injured at a hotel when a framed painting or picture fell on him. He eventually settled with the hotel’s liability insurer for $6,720.75. He gave Pamela the settlement check. Pamela testified that she used the check to pay off a large part of the debt on the Malibu.
¶ 13. In her petition for contempt, Pamela asked the chancellor to find Lance in contempt for, among other things, his failure to pay off the debt on the Malibu as required by the divorce decree. The chancellor found that because Lance had given Pamela the settlement check and that she had used the check to pay off the debt on the car, Lance was not in contempt on this issue.
¶ 14. On appeal, Lance asserts that the chancellor did not give him credit for the settlement check. Lance makes no effort to explain why the chancellor’s application of the check to the debt on the Malibu was improper. We find that the chancellor’s order considered the settlement check, and Lance was given credit for this sum paid. This issue is without merit.

2. Whether Lance’s' child-support obligation ceased when Jordan moved back into the Pascagoula home.

¶ 15. The chancellor determined that $62,000 in unpaid child support had vested. He subtracted from that amount various contributions to the care of Jordan that Lance had made over the years. Af *1229 ter making those deductions, the chancellor determined that Lance owed Pamela $30,701.96 in past-due child support.
¶ 16. On appeal, Lance argues that Jordan was emancipated when, at the age of sixteen, he left Pemberton’s house and returned to the Pascagoula house to live by himself. Lance argues that his child-support obligation ceased at that time. However, an issue may not be raised for the first time on appeal. Luse v. Luse, 992 So.2d 659, 663 (Miss.Ct.App. 2008). After reviewing the record, we do not find where Lance plead this issue or presented it to the chancellor for a decision. Therefore, this issue is procedurally barred.

3. Whether the chancellor set the wrong date for the termination of Lance’s alimony obligation.

¶ 17. The chancellor determined that because Pamela was cohabitating with Pemberton, Lance’s future alimony obligations were terminated. The question, however, remained as to how much alimony was past-due and owing. To answer this question, the chancellor had to determine the date on which Lance’s alimony obligation ceased. The chancellor determined that Lance’s obligation ceased on the date he filed his counterclaim that sought termination of alimony—January 23, 2007. As a result, the chancellor determined that $5,800 in unpaid alimony had accrued and vested between the entry of the divorce decree and January 23, 2007.
¶ 18. On appeal, Lance argues that his obligation ceased on the date Pamela moved in with Pemberton. That exact date is unclear, but it was sometime in September 2005. If Lance is correct, he would be entitled to a substantial reduction in the amount of past-due alimony he owes.
¶ 19. “Cohabitation by the payee spouse creates a presumption that a material change in circumstances has occurred justifying termination of alimony. Scharwath v. Scharwath, 702 So.2d 1210, 1211 (¶ 6) (Miss.1997). The payee spouse then bears the burden to prove no mutual support between cohabitants. Id.” Dill v. Dill, 908 So.2d 198, 203 (¶ 15) (Miss.Ct.App.2005).
¶20. Here, the chancellor determined that because Pamela was cohabitating with Pemberton, the presumption of a material change in circumstances was raised. He further found that Pamela had not rebutted the presumption. Therefore, Lance’s future alimony obligations were terminated. Neither party to this appeal challenges that ruling.
¶ 21. Lance argues that he was entitled, not only to termination of his future alimony obligations, but also to retroactive modification back to the date Pamela began living with Pemberton. The general rule is that permanent alimony payments vest when due and cannot be modified. McCardle v. McCardle, 862 So.2d 1290, 1293 (¶ 16) (Miss.Ct.App.2004) (citations omitted). This general rule has been qualified to give chancellors discretion to modify retroactively back to the date the petition to terminate or modify the alimony was filed. Wallace v. Wallace, 12 So.3d 572, 576 (¶ 19) (Miss.Ct.App.2009) (citations omitted). That is exactly what the chancellor did in this case. Accordingly, we find that the chancellor was not in error, and this issue is without merit.
¶ 22. THE JUDGMENT OF THE CHANCERY COURT OF JACKSON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING, P.J., MYERS, BARNES, ROBERTS, CARLTON AND *1230 MAXWELL, JJ., CONCUR. ISHEE AND RUSSELL, JJ., NOT PARTICIPATING.

. Lacey was emancipated at the time of the divorce due to her age.