ISHEE, J., for the Court:
¶ 1 In September 2009, the Lamar County Chancery Court granted Rosemary and Stewart Finch a divorce based on irreconcilable differences. The parties had previously agreed to the amount of child support Stewart would pay, and the chancery court awarded Rosemary periodic monthly alimony. The parties’ debts and assets were also distributed, and all other issues were decided. Thereafter, Rosemary filed a petition for contempt, and Stewart filed a counter-petition for contempt and modification. In ruling on the petitions, the chancery court found that Rosemary had committed a fraud upon the court in her Uniform Chancery Court Rule 8.05 financial statement, and that the parties’ minor child voluntarily became estranged from Stewart. Accordingly, the chancery court reduced Stewart’s monthly alimony and child support obligations. From this ruling, Rosemary appeals. Stewart cross-appeals, arguing the chancery court erred by failing to declare their minor son fully emancipated.
FACTS AND PROCEDURAL HISTORY
¶ 2 Rosemary and Stewart were married on February 14, 1981. During the marriage, they had two children together, Shannon and Sean. At the time of the divorce, Shannon was twenty-four years old, and Sean was seventeen years old. Stewart was a tugboat captain who works in New York. Rosemary was a stay-at-home parent. During the marriage, while the family resided in Hattiesburg, Mississippi, Stewart alternated between two weeks on the tugboat and two weeks in Mississippi. The parties separated in March 2008.
¶ 3 On April 4, 2008, Rosemary filed a complaint for separate maintenance, custody, support, and other relief. On December 4, 2008, the chancery court entered a temporary order requiring Stewart to pay $4,500 per month in alimony and child support, to begin on November 15, 2008. The order further: required Stewart to maintain health insurance for Rosemary and Sean; granted Rosemary exclusive use and possession of the marital home, which was to be listed with a realtor for sale; divided the parties vehicles; prevented the parties from making charges to their credit cards; and awarded Stewart reasonable visitation with Sean. Thereafter, Stewart filed a contempt petition alleging Rosemary failed to comply with the temporary order because she never attempted to sell the home. The chancery court ordered Rosemary to make the home available for showings and maintain the home in proper condition.
¶ 4 On August 13, 2009, the parties filed a consent to adjudicate. They consented to a divorce based on irreconcilable differences and agreed to permit the chancery court to decide all matters on which they could not agree. The following issues were to be decided by the chancery court: *318 the amount of permanent, lump-sum, or rehabilitative alimony, if any; the identification, valuation, and equitable division of all marital assets and liabilities; the amount of attorney’s fees, if any; the percentage of medical costs related to Sean; the division of Sean’s school expenses, including college expenses; life insurance coverage; and continued health-insurance coverage.
¶ 5 The parties agreed that Rosemary would have primary physical and legal custody of Sean, with Stewart exercising reasonable visitation. Stewart was required to pay $1,300 per month in child support; maintain $300,000 in life insurance on himself with Sean as the beneficiary; and maintain health insurance for Sean. Stewart was also ordered to provide health-insurance coverage (COBRA) for Rosemary for thirty-six months. Under the consent to adjudicate, Rosemary retained the marital home and agreed to pay any future expenses associated with the property. In addition, Stewart was to transfer the title of Rosemary’s and Shannon’s vehicles to them. Rosemary and Shannon were to pay the outstanding loans on their respective vehicles. The parties further agreed on the division of certain personal property.
¶ 6 On September 18, 2009, a divorce was granted based on irreconcilable differences. The chancery court ordered Stewart to pay Sean’s college expenses, including tuition, room and board, and books. Sean’s high school expenses for attending a private school were to be paid from the child support provided to Rosemary each month. Stewart was also required to pay three-fourths of any uninsured medical needs of Sean.
¶ 7 When determining alimony, the chancery court considered the parties’ income and living expenses. The chancery court found Stewart’s living expenses totaled $2,827.35, and Rosemary’s living expenses totaled $6,216.28. Thus, the parties cited $9,043.63 in total expenses, but had only $8,190 in monthly income. Ultimately the chancery court awarded Rosemary monthly periodic alimony of $4,000 for thirty-six months, a subsequent reduction to $3,700 for forty-eight months, and then a final reduction to $3,400, to be paid indefinitely. Finally, the chancery court ordered Stewart to pay $7,000 for Rosemary’s attorney’s fees.
¶ 8 On December 15, 2009, shortly after the finalization of the divorce, Rosemary filed a contempt petition. The contempt petition focused on Stewart’s alleged failure to pay alimony and child support. In addition, she cited his alleged failure to follow other directives within the judgment, including his failure to obtain life insurance, to make COBRA payments, and to disclose his current address and telephone number. Rosemary sought to have an order of withholding entered for alimony and child support payments and COBRA coverage.
¶ 9 On January 28, 2010, Stewart filed an answer to Rosemary’s contempt petition and a counter-petition for contempt. He alleged that Rosemary had failed to pay the outstanding balance on one vehicle as ordered by the chancery court and had failed to provide him with certain property from the marital home. Stewart further requested that Rosemary submit to a medical examination in order to procure life insurance. Finally, he implored the chancery court not to enter an order of withholding, for fear of losing his job.
¶ 10 In June 2010, Stewart filed an amended counter-petition for contempt and modification. He alleged that since the filing of the original petition, he had discovered that Rosemary “fraudulently represented to the [chancery court] at the time of trial that she was continuing to pay *319 all of the marital debts just as she had throughout the marriage.” However, according to Stewart, she had not made payments on their American Express account even though that bill was accounted for in the alimony payments. Thus, he requested that the chancery court reduce his alimony payments from $4,000 to $2,500 in order to offset the costs incurred as a result of her actions. He also included a petition to declare the minor child emancipated or, in the alternative, to terminate child support. Stewart claimed Sean refused to respond to any attempts at communication made by Stewart, and that, in fact, Sean actually texted Stewart to advise him not to attempt to text or call anymore. Furthermore, Stewart asserted Sean had taken legal action to have the name “Stewart” removed as his middle name.
¶ 11 On August 25, 2010, a hearing was held on all of the post-divorce-judgment motions before the Honorable Billy Bridges. At the end of the hearing, the chancellor directed the parties to submit proposed findings of fact and conclusions of law. However, before the parties’ submissions, the special appointment of Chancellor Bridges expired. Therefore, the Honorable Deborah Gambrell was appointed as chancellor.
¶ 12 On February 16, 2011, Chancellor Gambrell entered an opinion and judgment in the matter. The chancellor found that several changes had occurred since the August 25, 2010 hearing. Stewart was ordered to pay $9,211.95 to satisfy the debt owed on his daughter’s vehicle in order to convey title, even though the court had previously ordered that she take over the payments. With regard to the credit cards, the chancellor found that in addition to the credit cards listed in the Rule 8.05 financial declaration, which included the disputed American Express debt, there were several other credit cards not disclosed by Rosemary. This resulted in Stewart borrowing $88,000 to pay off the debt. The chancellor found that Rosemary had handled all of the family finances and was aware of the undisclosed debt, but failed to inform the chancery court. Therefore, the chancellor reasoned that Rosemary had committed a fraud upon the court by failing to disclose the additional debts. The chancellor adduced that Rosemary’s fraud permitted the chancery court to modify the divorce judgment under Mississippi Rule of Civil Procedure 60(b).
¶ 13 The chancellor noted that since the divorce judgment was entered, Stewart’s monthly income had been reduced from $8,190.47 to $5,691.75. Furthermore, due to payments for alimony, child support, COBRA, life insurance, and the loan for the undisclosed debts, his monthly expenses had increased to $11,279.62. Thus, the chancellor ordered that beginning on November 1, 2010, Stewart’s alimony obligation was reduced to $2,000, to be paid until Rosemary’s death or remarriage. Stewart was entitled to receive a credit for any amount paid in accordance with the divorce judgment from November 1, 2010, until the chancery court’s ruling. The monthly payments for COBRA insurance and life insurance were to continue.
¶ 14 The chancellor also reduced the monthly child support owed. It was undisputed that the father-son relationship became strained after the divorce. Sean repeatedly said he did not want a relationship with his father, and even sought to remove Stewart as his middle name. While the chancellor found Sean’s actions were clear and extreme — the legal basis for forfeiting child support[1] — the chancellor found Sean’s behavior may have been *320 motivated, at least to some degree, by Rosemary. Accordingly, the chancellor ruled against emancipating the child. The chancellor did, however, reduce Stewart’s child-support obligation to $900 per month, compared to the $1,300 the parties agreed to in the consent to adjudicate. The chancellor also removed Stewart’s obligation to pay for Sean’s college expenses. Finally, the chancellor ruled that each party would be responsible for his or her own attorney’s fees because both parties were in contempt on at least one occasion during the proceedings.
¶ 15 Rosemary now appeals the February 16, 2011 opinion and judgment. On appeal, she argues the chancery court erred by (1) sua sponte reviewing a final, unappealable judgment; (2) finding a fraud upon the court based on the Rule 8.05 financial statement where Stewart did not allege fraud, and did not prove fraud by clear and convincing evidence; (3) retroactively reducing previously paid alimony and unpaid child-support payments; (4) hearing Stewart’s petitions for contempt and Rule 60(b) applications when he appeared before the court with “unclean hands”; (5) refusing to enforce the September 2009 divorce judgment; and (6) failing to assess against Stewart all of her attorney’s fees, legal expenses^ and costs. Stewart cross-appeals the same judgment. He argues the chancellor erred by failing to fully emancipate Sean.
DISCUSSION
¶ 16 When reviewing a chancellor’s decision, this Court employs a limited standard of review. Williams v. Williams, 56 So.3d 1277, 1280 (¶ 12) (Miss.Ct.App.2011). “We will not disturb a chancellor’s findings unless the court was manifestly wrong, abused its discretion[,] or applied an erroneous legal standard.” Id. (citations omitted). Furthermore, this Court “will not substitute our judgment for the chancellor’s, even if we disagree with his or her findings of fact and would arrive at a different conclusion.” Vaughn v. Vaughn, 56 So.3d 1283, 1288 (¶17) (Miss.Ct.App.2011) (citing Coggin v. Coggin, 837 So.2d 772, 774 (¶ 3) (Miss.Ct.App.2003)). The standard of review for the chancellor’s interpretation and application of law is de novo. Carroll v. Carroll, 976 So.2d 880, 885 (¶ 8) (Miss.Ct.App.2007) (citing Isom v. Jernigan, 840 So.2d 104, 106 (¶ 6) (Miss. 2003)).
I. Sua Sponte Review of Final, Unappealable Judgment
¶ 17 Rosemary contends the chancery court erred by sua sponte reviewing a final, unappealable judgment. She further asserts the chancery court did not have the authority to set aside large portions of the final judgment that accepted and incorporated issues on which the parties agreed before trial. In seeking to have the divorce decree altered, Stewart filed a petition for contempt and modification rather than a Rule 60(b) motion. Therefore, Rosemary argues the trial court erred by sua sponte finding fraud upon the court.
¶ 18 While Stewart did not file a Rule 60(b) motion, he did allege fraud in the petition for contempt and modification. Furthermore, “[t]he chancery court is vested with broad equitable powers with which it is able to decide if the original order was entered by mistake, fraud of a party, or for another reason justifying relief from.the judgment under Rule 60(b) and may do so upon its own motion.” Tirouda v. State, 919 So.2d 211, 214 (¶ 7) (Miss.Ct.App.2005) (citing Edwards v. Roberts, 771 So.2d 378, 386 (¶ 28) (Miss.Ct.App.2000)). Rule 60(b) even states: “This rule does not limit the power of a court to entertain an independent action to relieve *321 a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court.” Accordingly, the chancery court did not err by finding fraud upon the court and altering the final divorce decree without Stewart filing a Rule 60(b) motion.
II. Fraud Upon the Court
¶ 19 Rosemary asserts the chancery court’s finding that she committed fraud upon the court based on her Rule 8.05 financial statement was improper. She contends Stewart never alleged fraud, nor was fraud proven by clear and convincing evidence. Rosemary further argues that even if the chancellor could conclude she committed fraud, it was fraud upon the individual, for which a six-month time limit applies, not fraud upon the court.
¶ 20 Mississippi Rule of Civil Procedure 60(b) permits the court to relieve a party from a final judgment for various reasons. Rule 60(b) provides, in part:
(b) Mistakes; Inadvertence; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
(1) fraud, misrepresentation, or other misconduct of an adverse party;
(2) accident or mistake;
(3) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application;
(6)any other reason justifying relief from the judgment.
While a Rule 60(b) motion must be made within a reasonable time, for the first three subsections, the motion must be brought within six months of the entry of a final judgment. However, Rule 60(b) also states: “This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set .aside a judgment for fraud upon the court.” Thus, there is no time limitation for fraud upon the court.
¶ 21 The chancellor found Rosemary committed a fraud upon the court and, therefore, concluded the Rule 60(b) time limitation does not apply. In its ruling, the chancery court stated:
Because [Rosemary] handled all of the finances of the family, paid all of the bills[,] and secured credit, she was acutely aware of the lingering undisclosed indebtedness that would plague [Stewart,] and due to her failure to disclose the same, she committed a fraud upon the court ... [T]herefore no time limit constrains the court’s ability to modify the divorce judgment to remedy the fraud on the court.
Accordingly, the chancery court modified the terms of the final divorce judgment.
¶ 22 To establish fraud, the following elements must be proven by clear and convincing evidence:
(1) a representation, (2) its falsity, (3) its. materiality, (4) the speaker’s knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer’s ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.
*322 Trim v. Trim, 33 So.3d 471, 478 (¶ 19) (Miss.2010) (citing McCord v. Healthcare Recoveries, Inc., 960 So.2d 399, 406 (¶ 17) (Miss.2007)). In Trim, the Mississippi Supreme Court clearly stated: “We take this opportunity to hold that a party’s intentional filing of a substantially false Rule 8.05 financial disclosure statement constitutes a fraud on the court, for which there is no limitation of time restricting the court from affording a remedy.” Trim, 33 So.3d at 473 (¶ 3) (citing M.R.C.P. 60(b)).
¶ 23 The Rule 8.05 financial disclosure for Rosemary that was filed at the time of trial showed that as of May 18, 2010, she had no income, including no Social Security benefits. She listed her expenses as $4,461.06 and her combined expenses, which included Sean’s expenses, as $6,216.28. Her monthly expenses also included installment payments for credit-cards debts owed to Regions, Citi, and Chase. She listed two bank accounts in her name. One was solely in her name and had an account balance of $8; the second account was a joint bank account in both her and Stewart’s names with a balance of $.08. The six liabilities she listed are as follows: a Fidelity Bank home mortgage in both names; a Chase line of credit in Stewart’s name; a Chase loan for one automobile in Stewart’s name; a Wells Fargo loan for a second automobile in Stewart’s name; a Citi credit card in Rosemary’s name; and a Regions debt in Rosemary’s name.
¶24 In her Rule 8.05 financial disclosure, Rosemary failed to disclose the following credit accounts: a Sam’s Club credit card with an account balance of $6,307; a GE Money Bank account with a balance of $6,477.62; a Chase credit card with a balance of $6,331; a Best Buy credit card with an account balance of $4,711; and an Oreck debt account with a balance of $948. The omitted liabilities totaled $24,774.62. Rosemary also failed to disclose the $728 she received each month in Social Security. In addition, Rosemary did not disclose all of the bank accounts to which she had access.
¶ 25 Rosemary admitted that she handled all of the financial matters and paid all of the credit-card bills; thus, she knew of the five additional credit cards not listed. However, she asserts that Stewart monitored his financial status via three credit-card agencies and should have known about the additional credit cards. Rosemary introduced letters from three separate credit agencies to show that Stewart put a security alert on his credit file in April 2008. The letters show the credit alert was established to prevent someone from fraudulently opening credit in his name, and the credit alert was to expire after ninety days. Nothing in the letters indicates that Stewart continued to monitor his credit or that he ever knew of the existence of all of the credit cards. Moreover, the letters were sent to the parties’ Hattiesburg address in April 2008, and Stewart moved out of the marital home in March 2008. Accordingly, these letters do not prove that Stewart knew of the debts or about the non-payment of the debts.
¶ 26 Furthermore, it is clear Rosemary failed to disclose at least two Regions bank accounts. One was a savings account, and the second was her mother’s account to which she had access. The facts show Rosemary was aware of the additional debts and bank accounts and failed to disclose them to the chancery court during its attempt to make an equitable divorce decree. Accordingly, the chancery court did not abuse its discretion in finding Rosemary filed a substantially false Rule 8.05 financial statement, thus committing a fraud upon the court. Therefore, the six month time limitation does not apply, and *323 the chancery court was within its discretion in vacating the original divorce judgment and altering the terms of that judgment.
III. Retroactive Reduction of Alimony and Child Support
¶ 27 Rosemary argues the chancery court erred by retroactively reducing the amount of alimony and child support due. She argues the payments became vested when due and could not be modified. The chancellor reduced the alimony payments from $4,000 per month to $2,000 per month, and ordered that Stewart receive credit for any alimony payments exceeding $2,000 since November 2010. Thus, he would receive credit for any amount paid over $2,000 from November 2010 through February 2011, when the judgment was entered. The amount of monthly child support was also modified from $1,300 per month to $900 per month. The change was retroactively effective beginning August 2010. The chancellor also ordered that Stewart was not obligated to pay for Sean’s college expenses.
¶ 28 Ordinarily, periodic alimony may be altered “only if there has been a material change in the circumstances of one or more of the parties.” Sturdavant v. Sturdavant, 53 So.3d 838, 841 (¶ 10) (Miss.Ct.App.2011) (quoting Steiner v. Steiner, 788 So.2d 771, 776 (¶ 15) (Miss.2001)). If the chancery court has determined that a downward modification of alimony is appropriate, “a chancellor has the discretionary authority to order the modification retroactive to the date on which the petition to modify was filed.” Austin v. Austin, 981 So.2d 1000, 1006 (¶ 23) (Miss.Ct.App.2007) (citations omitted). Additionally, a modification of child support may be granted where the “complaining party proves that a substantial and material change in circumstances has arisen subsequent to the original decree and that said change was neither foreseeable at the time of the original decree nor caused by the willful or bad faith actions of the complaining party.” Dill v. Dill, 908 So.2d 198, 201 (IT 10) (Miss.Ct.App.2005) (citing Magee v. Magee, 755 So.2d 1057, 1059-60 (¶ 9) (Miss.2000)). Furthermore, “support obligations to the child ‘vest in the child as they accrue, and no court may thereafter modify or forgive them if they be not paid.’ ” Gambrell v. Gambrell, 644 So.2d 435, 444 (Miss.1994) (quoting Dept. of Human Servs. v. Rains, 626 So.2d 136, 138 (Miss.1993)).
¶ 29 Because the chancery court found Rosemary committed fraud upon the court in her Rule 8.05 financial statement, the parties were relieved from the final divorce decree. Although the parties agreed to the terms of the child support in the consent to adjudicate, those terms were incorporated into the final divorce decree. As such, the chancellor was free to modify the amount of alimony and child support Stewart was required to pay without finding a material change in circumstances. This issue is without merit.
IV. Unclean Hands
¶ 30 Rosemary asserts the chancery court erred by modifying the alimony and child support payments while Stewart had “unclean hands.” The doctrine of unclean hands “prevents a complainant from petitioning the court to modify an original decree absent proof that said complainant has fully performed under the terms of the original decree or, in the alternative, that full performance thereunder has been wholly impossible.” Dill, 908 So.2d at 202 (¶ 11) (citing Kincaid v. Kincaid, 213 Miss. 451, 456, 57 So.2d 263, 265 (1952)). However, one’s hands can be cleansed by a judgment for arrears. Chapman v. Ward, 3 So.3d 790, 799 (¶ 29) (Miss.Ct.App.2008).
*324 ¶ 31 Rosemary claims that at the time of the February 2011 opinion and judgment, Stewart had not paid child support since August 2010. She further contends Stewart had “unclean hands” because he paid alimony within the month due rather than on the first day of each month. Accordingly, Rosemary argues that only upon a judgment against Stewart for all unpaid sums should the court have heard an argument for modification.
¶ 32 While it is true that Stewart had “unclean hands” such that it would be an abuse of discretion to modify the divorce decree, the original divorce decree was set aside due to fraud upon the court. Therefore, the chancery court did not err by altering the terms of the original divorce decree regardless of Stewart’s status under the original divorce decree. Accordingly, this argument is without merit.
V.Enforcement of September 2009 Divorce Judgment
¶ 33 Rosemary argues the chancery court erred by failing to grant her enforcement motion. She asserts that at the time of the enforcement motion, Stewart had not paid child support since August 2010; had not paid any of Sean’s educational expenses or his portion of Sean’s medical expenses; had not paid all of the monthly COBRA expenses; had not provided proof of life insurance; had not paid alimony on time; and had unilaterally reduced monthly alimony payments on three occasions. She claims the February 2011 judgment had the practical effect of denying her enforcement motion because it retroactively reduced alimony and child support obligations rather than ordering them to be paid.
¶ 34 The chancery court did not err by failing to grant the enforcement motion. The chancellor properly found Rosemary committed a fraud upon the court, which had the effect of vacating the original divorce decree. Therefore, there was no final judgment to enforce. This issue is without merit.
VI. Attorney’s Fees and Litigation Expenses
¶ 35 According to Rosemary, Stewart did not have a reasonable, good faith, or substantial basis for the allegations in either his January 2010 counter-petition or his June 2010 amended counter-petition. Furthermore, she claims Stewart was in contempt for failing to discharge, his duties under the September 2009 judgment. Accordingly, Rosemary asserts that she is entitled to reasonable attorney’s fees and litigation costs beginning with her 2009 petition through the present appeal.
¶ 36 “[T]he matter of determining attorney[’]s fees in divorce cases is largely entrusted to the sound discretion of the court.” McKee v. McKee, 418 So.2d 764, 767 (Miss.1982) (citing Walters v. Walters, 383 So.2d 827 (Miss.1980)). Here, the chancery court found that because both parties had been in contempt for violating the judgment of divorce on at least one occasion during the litigation, each party was responsible for his or her own attorney’s fees. Furthermore, Rosemary’s argument that Stewart did not have a reasonable, good faith, or substantial basis for the allegations in either his January 2010 counter-petition or his June 2010 amended counter-petition is without merit. The chancery court found in Stewart’s favor on certain issues raised in his petitions, and we have already discussed and upheld those decisions. We find the chancery court did not abuse its discretion by declining to award attorney’s fees to either party-
VII. Cross-Appeal Seeking Full Emancipation of Sean
¶ 37 On cross-appeal, Stewart argues the chancery court erred by failing to *325 fully emancipate Sean. To be timely, a notice of appeal must be filed with the clerk of the trial court within thirty days after the date of entry of the judgment or order appealed from. M.R.A.P. 4(a). If a timely notice of appeal is filed by a party, another party may file a notice of appeal within fourteen days of that notice, or within the thirty days from the judgment appealed from, whichever is later. M.R.A.P. 4(c). Here, the final judgment that the parties are appealing from was entered on February 16, 2011. Rosemary filed her notice of appeal on February 24, 2011, well within the time allowed by the rules. Stewart did not file his notice of cross-appeal until June 10, 2011. Thus, he failed to timely file his cross-appeal.
¶ 38 On April 11, 2011, Stewart filed a motion to reopen pursuant to Mississippi Rule of Civil Procedure 60(b)(3). Rosemary also filed a Rule 60(b) motion to reopen to supplement the record. In Stewart’s motion, he sought to supplement the record with Sean’s college transcript, and he requested the termination of child support retroactive to August 2010 in light of the transcript. He also asked that the time to file a cross-appeal be reopened. Mississippi Rule of Appellate Procedure 4(g) provides: “The trial court may extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time otherwise prescribed by this rule.” Accordingly, Stewart met the deadline to seek an extension of time to file a cross-appeal.
¶ 39 On May 17, 2011, the chancellor ruled that the February 16, 2011 judgment should remain effective until either party attempts to file further proceedings relating to emancipation. The chancellor failed to rule on Stewart’s request for the time to file a cross-appeal to be reopened. Because Stewart missed his time to file a cross-appeal and the chancellor failed to rule on his request that his time to file a cross-appeal be reopened, we are without jurisdiction to address his cross-appeal. Accordingly, we dismiss the cross-appeal for lack of jurisdiction.
¶ 40 THE JUDGMENT OF THE LAMAR COUNTY CHANCERY COURT IS AFFIRMED ON DIRECT APPEAL, AND THE CROSS-APPEAL IS DISMISSED FOR LACK OF JURISDICTION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT/CROSS-APPELLEE AND APPELLEE/CROSS-APPELLANT.
LEE, C.J., GRIFFIS, P.J., ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. BARNES AND FAIR, JJ., NOT PARTICIPATING.

. Caldwell v. Caldwell, 579 So.2d 543, 548 (Miss.1991).