BARNES, J.,
for the Court:
¶ 1. On June 24, 2011, Amy Crawford signed an affidavit and affirmation of paternity naming Marty C. Ford as the natural father of her eight-year-old son. Although Ford denied paternity, he agreed to genetic testing and signed a joint petition to determine paternity with the Mississippi Department of Human Services (MDHS). When the results revealed that Ford was indeed the natural father of the child, the MDHS filed the joint petition with the Chickasaw County Chancery Court on December 21, 2011.
¶ 2. A hearing was set for April 2, 2013; however, although Ford was personally served with a summons, he did not appear at the hearing. The chancery court en *1243 tered its judgment on April 2, 2013, ordering Ford to pay $400 in monthly child support based on an adjusted gross monthly income of $2,900.[1] Twenty-nine months of retroactive child support (from January 1, 2011) was also ordered in the amount of $11,600, for which Ford was to pay $80 per month until paid in full.
¶ 3. On May 30, 2013, Ford filed a petition to modify the final judgment, claiming that his income had “suffered an involuntary reduction” and, thus, had impaired his ability to make the required payments. Ford requested that the monthly child support be decreased “commensurate with [his] changed financial status and the Child Support Guidelines,” and the retroactive support be deleted or, in the alternative, decreased and credited with voluntary payments he made to Crawford.
¶ 4. A hearing on the petition was held on August 13, 2013. Ford testified he was currently self-employed doing automobile body work, and his income varied between $0 and $2,100 per month. He also said that at the time of the April 2, 2013 hearing, he was employed as a commercial truck driver, but had very little positive income, due to his other child-support obligations. He admitted that prior to that, he had been employed with the Tupelo Public School District, where he earned approximately $2,900 per month. However, he left that job in July 2012, claiming it caused him to suffer stress-related high blood pressure, but he confessed his physician did not say his blood pressure was “an unhealthy amount.” He also acknowledged to the court that he had not paid any of the ordered monthly child support since the April 2, 2013 judgment.
¶ 5. Also testifying, Crawford agreed to a decrease in the monthly child support, but she requested $288 per month, stating that Ford’s suggested $150 per month was “just not right.” She also requested that the retroactive support remain in place, and confirmed that Ford had paid her $1,400. At the conclusion of the hearing, the chancellor modified the judgment, reducing the monthly child-support award to $288, and providing Ford with a credit of $1,400 for voluntary payments he had made to Crawford to be applied against the retroactive child-support award of $11,600. The order modifying the judgment was entered on August 28, 2013.
¶ 6. In the meantime, Ford filed a motion to set aside the judgment on August 22, 2013. Ford subsequently filed an amended motion to set aside the judgment on September 5, 2013, and a hearing was held September 25, 2013. At that hearing, Ford, representing himself pro se, again argued that the ordered child support, both monthly and retroactive, was based on incorrect income amounts. Ford contended that the adjusted monthly gross income of $2,900 from when he was employed with the school district should not have been used to calculate the child support. He also argued that January 2011 to April 2013 was only twenty-eight months; thus, the chancery court’s order of twenty-nine months of retroactive child support was erroneous. The chancellor concluded that Ford had an opportunity to address these issues in prior proceedings and that Ford had presented no new evidence to the court that would warrant modification of the judgment.
¶7. Ford filed a notice of appeal on October 17, 2013, challenging the chancery court’s three orders of April 2, 2013, August 28, 2013, and September 25, 2013. We find we have no jurisdiction over the April 2, 2013 order, as Ford failed to file a timely appeal of that judgment. Address *1244 ing the August 28, 2013 modified order, we find no abuse of discretion in the chancellor’s findings, and we affirm the chancellor’s denial of Ford’s motion to set aside the modified order.
DISCUSSION
I. April 2, 2013 Judgment
¶ 8. Under the Mississippi Rules of Civil Procedure, there are two means by which to move the trial court to reconsider its judgment.
The aggrieved party may (1) file a motion for a new trial or to alter or amend under [Mississippi Rule of Civil Procedure] 59 or (2) file [a motion] for ... relief from a final judgment under [Mississippi Rule of Civil Procedure] 60(b).... The timing of the motion to reconsider determines whether it is a Rule 59 or Rule 60(b) motion.
Woods v. Victory Mktg., LLC, 111 So.3d 1234, 1236 (¶ 6) (Miss.Ct.App.2013). A Rule 59 motion to reconsider must be filed within ten days of the entry of the judgment, and the filing of the motion tolls the thirty-day time period to file a notice of appeal until disposition of the motion by the trial court. Woods, 111 So.3d at 1236 (¶7). “Consequently, a notice of appeal following the denial of a Rule 59 motion to reconsider encompasses both the denial of reconsideration and the underlying judgment.” Id. (citing Perkins v. Perkins, 787 So.2d 1256, 1261 (¶ 9) (Miss.2001)). However, “a motion to reconsider filed more than ten days after the entry of the judgment falls under Rule 60(b) ... [and] does not toll the thirty-day time period to file a notice of appeal.” Woods, 111 So.3d at 1236 (¶ 8).
¶ 9. Although not addressed by either party, Ford’s May 30, 2013 petition to modify the judgment was filed more than ten days after entry of the April 2, 2013 order; therefore, we must treat it as a motion for relief from the judgment under Rule 60(b). Ford also failed to file a notice of appeal within thirty days of the entry of the April 2, 2013 order. Consequently, this Court is without jurisdiction to address the merits of that underlying judgment. See Woods, 111 So.3d at 1236 (¶ 8) (holding that since a notice of appeal from the denial of a Rule 60(b) motion limits our Court’s review to whether the denial was proper, we have “no jurisdiction to consider the merits of the underlying judgment”).
II. August 28, 2013 Judgment
¶ 10. Therefore, our review is limited to the chancery court’s disposition of Ford’s Rule 60(b) motion in its August 28, 2013 order. Under Rule 60(b), a party may be relieved from a final judgment for “any other reason justifying relief from the judgment.” M.R.C.P. 60(b)(6). Relief under Rule 60(b)(6) should be reserved for “extraordinary and compelling circumstances.” Briney v. U.S. Fid. & Guar. Co., 714 So.2d 962, 966 (¶ 12) (Miss.1998). In this instance, the chancery court did grant Ford relief, decreasing Ford’s monthly child-support obligation from $400 to $288 (beginning September 2013). The court also deducted $1,400 from the ordered retroactive child support of $11,600.
¶ 11. On appeal, Ford contends that the chancery court’s order constituted manifest error because it was based on Crawford’s testimony, not Ford’s actual income, and deviated from the statutory guidelines. Although it does not challenge the chancery court’s ruling, the MDHS argues that Ford’s “testimony as to his current and past income was very inconclusive and unsubstantiated.” The MDHS further notes that Ford failed to provide evidence that he suffered an involuntary reduction in income; therefore, the chancery court was not obligated to reduce the child support *1245 based on the evidence, or lack thereof, provided by Ford.
¶ 12. “In cases involving child support, we afford the chancellor considerable discretion, and his findings will not be reversed unless he was manifestly in error or abused his discretion.” Reid v. Reid, 998 So.2d 1032, 1036 (¶ 7) (Miss.Ct.App.2008) (quoting Southerland v. Southerland, 875 So.2d 204, 208 (¶ 12) (Miss.2004)). A modification of child support may be granted “if the complaining party proves that a substantial and material change in circumstances has arisen subsequent to the original decree and that said change was neither foreseeable at the time of the original decree nor caused by the willful or bad faith actions of the complaining party.” Dill v. Dill, 908 So.2d 198, 201 (¶ 10) (Miss.Ct.App.2005) (citing Magee v. Magee, 755 So.2d 1057, 1059-60 (¶ 9) (Miss.2000)). However, “if an obligor, acting in bad faith, voluntarily worsens his financial position so that he cannot meet his obligations, he cannot obtain a modification of support.” Lahmann v. Hallmon, 722 So.2d 614, 622 (¶ 29) (Miss.1998) (quoting Parker v. Parker, 645 So.2d 1327, 1331 (Miss.1994)).
¶ 13. At the August 2013 hearing, Ford argued that his prior income from the school district should not have been used to calculate the awarded child support, and he testified that his current monthly income, as a self-employed body-shop owner, varied from $0 to $2,100. When the child support was awarded in April 2013, however, Ford was actually employed as a commercial truck driver. The chancellor noted that Ford maintained his commercial driver’s license and that he could easily obtain steady employment in that capacity again should he wish to do so. Ford provided no evidence he had attempted to find more lucrative employment, despite his prior work experience and qualifications, and acknowledged that there were no health reasons keeping him from working as a commercial truck driver.
¶ 14. During her testimony, Crawford agreed to a decrease in monthly support from $400 to $288, and she admitted she had received $1,400 from Ford. Ford was not present at the April 2, 2013 hearing, and the MDHS acknowledged to the court at that hearing it only possessed Ford’s “old wage information” from the school district because it was unsuccessful in obtaining any current wage information from Ford’s employer, the trucking company. Therefore, the chancellor provided Ford with some relief from the monthly child-support payments.
¶ 15. While it is questionable whether the circumstances presented by Ford to support his Rule 60(b) motion could be considered “extraordinary and compelling,” we find no abuse of discretion in the chancellor’s decision to decrease the monthly child support to $288 (based on Crawford’s request), and to afford credit for the $1,400 already paid by Ford to the ordered retroactive child support. We certainly find no evidence to support a reduction of any greater amount, as contended by Ford. This issue is without merit.
III. September 25, 2013 Order Denying Ford’s Amended Motion to Set Aside Judgment
¶ 16. On September 5, 2013, Ford filed an amended motion to set aside the August 2013 judgment. At the motion hearing, the chancellor inquired what Ford thought his child-support obligation should be. In response, Ford only offered vague assertions that the monthly support and retroactive support were “not- based on current wages” and suggested that the retroactive support be “deducted down to maybe $3,000.”
*1246 ¶ 17. We agree with the chancellor’s finding that the issues raised in Ford’s amended motion were the same issues addressed at the August 13, 2013 hearing. Ford brought no new material evidence to support a further modification of child support. Therefore, we affirm the chancery court’s denial of Ford’s motion to set aside the August 28, 2013 judgment. See McNeese v. McNeese, 119 So.3d 264, 273 (¶ 23) (Miss.2013) (finding no abuse of discretion in a chancellor’s denial of the appellant’s post-judgment motion, as it was “merely an attempt to relitigate the case”).
¶ 18. THE JUDGMENT OF THE CHANCERY COURT OF CHICKASAW COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ„ CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.

. It was noted that Ford was obligated to pay child support for four other children he had fathered, and he was given credit for those orders.