# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-IA-00535-SCT

*STATE OF MISSISSIPPI*

*v.*

*WALGREEN CO., AND SUPER D DRUGS
ACQUISITION CO. d/b/a WALGREENS # 15737*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/23/2017 |
| TRIAL JUDGE: | HON. MITCHELL M. LUNDY, JR. |
| COURT FROM WHICH APPEALED: | DeSOTO COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: GEORGE W. NEVILLE |
| | JACQUELINE H. RAY |
| | DONALD L. KILGORE |
| | D. RONALD MUSGROVE |
| | MICHAEL SHELTON SMITH, II |
| | WILSON DANIEL "DEE" MILES, III |
| | H. CLAY BARNETT |
| | ALLISON DOUILLARD HAWTHORNE |
| | JESSE MITCHELL, III |
| ATTORNEYS FOR APPELLEES: | DAVID F. MARON |
| | BARRY K. COCKRELL |
| | BRADLEY CLAYTON MOODY |
| | SAMUEL DEUCALION GREGORY |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED AND REMANDED - 08/09/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## CONSOLIDATED WITH

## NO. 2017-IA-00536-SCT

*STATE OF MISSISSIPPI*

*v.*

*CVS HEALTH CORPORATION, CVS PHARMACY 00047, CVS PHARMACY 01119, CVS PHARMACY 02038, CVS PHARMACY 03124, CVS PHARMACY 03426, CVS PHARMACY 04376, CVS PHARMACY 04519, CVS PHARMACY 04536, CVS PHARMACY 04782, CVS PHARMACY 04883, CVS PHARMACY 04966, CVS PHARMACY 04993, CVS PHARMACY 04997, CVS PHARMACY 05277, CVS PHARMACY 05573, CVS PHARMACY 05604, CVS PHARMACY 05739, CVS PHARMACY 05740, CVS PHARMACY 05744, CVS PHARMACY 05745, CVS PHARMACY 05746, CVS PHARMACY 05756, CVS PHARMACY 05777, CVS PHARMACY 05801, CVS PHARMACY 05808, CVS PHARMACY 05825, CVS PHARMACY 05835, CVS PHARMACY 05842, CVS PHARMACY 05846, CVS PHARMACY 05850, CVS PHARMACY 05865, CVS PHARMACY 05870, CVS PHARMACY 05876, CVS PHARMACY 05878, CVS PHARMACY 05883, CVS PHARMACY 05900, CVS PHARMACY 05908, CVS PHARMACY 05923, CVS PHARMACY 05925, CVS PHARMACY 05933, CVS PHARMACY 06031, CVS PHARMACY 06396, CVS PHARMACY 07065, CVS PHARMACY 07963, CVS PHARMACY 08273, CVS PHARMACY 08310, CVS PHARMACY 08311, CVS PHARMACY 08491, CVS PHARMACY 08954, CVS PHARMACY 08955, CVS PHARMACY 08992, CVS PHARMACY 08993, CVS PHARMACY 08994, CVS PHARMACY 10020, CVS PHARMACY 10400, CVS PHARMACY 10755, CVS 5168 MS LLC, CVS 7070 MS LLC, CVS 8956 MS LLC, CVS ORLANDO FLORIDA DISTRIBUTION, LLC, CVS/PHARMACY #16230 DBA, CVS/PHARMACY #17038 DBA, CVS/PHARMACY #17144 DBA, CVS/PHARMACY # 17498 DBA, CVS/PHARMACY #17532 DBA, CVS RX SERVICES, INC., CVS TN DISTRIBUTION, LLC AND CVS PHARMACY, LLC*

DATE OF JUDGMENT:                        02/23/2017
TRIAL JUDGE:                             HON. MITCHELL M. LUNDY, JR.
COURT FROM WHICH APPEALED:   DeSOTO COUNTY CHANCERY COURT

ATTORNEYS FOR APPELLANT:        OFFICE OF THE ATTORNEY GENERAL
                                BY: GEORGE W. NEVILLE
                                    JACQUELINE H. RAY
                                    DONALD L. KILGORE
                                D. RONALD MUSGROVE
                                MICHAEL SHELTON SMITH, II
                                WILSON DANIEL "DEE" MILES, III
                                H. CLAY BARNETT
                                ALLISON DOUILLARD HAWTHORNE
                                JESSE MITCHELL, III
ATTORNEYS FOR APPELLEES:         J. CAL MAYO
                                SARAH KATHERINE EMBRY
                                ENU MAINIGI
                                CRAIG D. SINGER
                                ASHLEY W. HARDIN
NATURE OF THE CASE:              CIVIL - OTHER
DISPOSITION:                     AFFIRMED AND REMANDED - 08/09/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**CONSOLIDATED WITH**

**NO. 2017-IA-00539-SCT**

*STATE OF MISSISSIPPI*

*v.*

*FRED'S INC., FRED'S STORES OF TENNESSEE, INC., AND FRED'S PHARMACY OF QUITMAN, LLC*

DATE OF JUDGMENT:               02/23/2017
TRIAL JUDGE:                    HON. MITCHELL M. LUNDY, JR.
COURT FROM WHICH APPEALED:      DeSOTO COUNTY CHANCERY COURT

ATTORNEYS FOR APPELLANT:    OFFICE OF THE ATTORNEY GENERAL
BY: GEORGE W. NEVILLE
    JACQUELINE H. RAY
    DONALD L. KILGORE
D. RONALD MUSGROVE
MICHAEL SHELTON SMITH, II
WILSON DANIEL "DEE" MILES, III
H. CLAY BARNETT
ALISON DOUILLARD HAWTHORNE
JESSE MITCHELL, III

ATTORNEYS FOR APPELLEES:    JEFFREY SCOTT NEWTON
ROBERT F. WALKER
D. STERLING KIDD

NATURE OF THE CASE:    CIVIL - OTHER
DISPOSITION:    AFFIRMED AND REMANDED - 08/09/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC**

**BEAM, JUSTICE, FOR THE COURT:**

¶1. This matter stems from a lawsuit filed by the State of Mississippi against the defendant pharmacies. The State alleges deceptive trade practices and fraudulent reporting of inflated "usual and customary" prices in the defendant's reimbursement requests to the Mississippi Department of Medicaid. The State argues that Walgreens, CVS, and Fred's pharmacies purposefully misrepresented these prices to obtain higher prescription drug reimbursements from the State of Mississippi. Finding that the circuit court was better equipped to preside over this action, Chancellor Lundy of the DeSoto County Chancery Court transferred the matter to the DeSoto County Circuit Court in response to the defendants' request. Aggrieved, the State timely filed its interlocutory appeal disputing the chancellor's decision to transfer the cause.

¶2.    After a thorough review of the parties' positions, this Court finds that the chancery court properly could have retained the action, but that the chancellor correctly used his discretion to transfer the case, allowing the issues to proceed in front of a circuit-court jury. As a result, we affirm the chancellor's decision.

## FACTS AND PROCEDURAL HISTORY[1]

### I.    Underlying Action

¶3.    The State filed suit against Walgreens, CVS, and Fred's pharmacies on September 30, 2016.[2] Through its complaint, the State detailed the complexities of Mississippi's Medicaid reimbursement program which led to the Legislature's creation of the Department of Medicaid (DOM). As the State explains, the Department was created to administer the Mississippi Medicaid program and to pay for the prescription drugs of individuals covered under the plan. Rather than reimbursing Medicaid recipients for eligible prescriptions directly, those recipients fill their medications with a pharmacy of their choice, and the dispensing pharmacies later request reimbursement from DOM.

¶4.    Upon receipt of a pharmacy's request for reimbursement, DOM applies one of four statutory and federally approved reimbursement formulas to determine how the State will reimburse the provider for the Medicaid participant's prescription. The formulas include separate price indices from which the State may calculate its reimbursement. From those

---

[1] The State's individual interlocutory appeals against Walgreens, CVS, and Fred's have been consolidated by this Court.

[2] The docket indicates that the State filed suit on June 28, 2016, and withdrew its initial complaint on September 30, replacing it with this, its First Amended Complaint.

5

indices, DOM selects the lowest price or rate to determine the reimbursement amount to remit.

¶5.     The State's complaint against the pharmacies concerns only one of the indices: the "usual and customary charge" (UC). This rate identifies the amount which providers–including the retail pharmacies at issue–are required to report.  The Mississippi Division of Medicaid Provider Billing Handbook defines the UC price as "the amount charged by the provider for the same service when provided to private-pay patients." The Mississippi Division of Medicaid refers to this as the "charge to non-medicaid patients" and previously has explained that this is the same as the price charged to a cash-paying customer.

¶6.     Neither party disputes  that the defendants–as retail pharmacies dispensing drugs to Medicaid customers–have entered into Medicaid Provider Agreements with the Mississippi Division of Medicaid. The State argues that, through these agreements, the defendants have agreed to comply with all state and federal Medicaid laws, including the conditions outlined for drug-claims payments.  Because the pharmacies were aware of the State's definition of UC and voluntarily have entered into these provider agreements, the State claims that the pharmacies are bound by Mississippi Division of Medicaid's UC definition as well as the price reporting requirements implemented by the State.

¶7.     Although the pharmacies are both aware of and bound to the UC price-reporting requirement, the State asserts that the defendants do not report their discount drug program prices[3] as their UC prices.  Rather, the pharmacies report the full price they might charge,

_____

[3] Like the vast majority of pharmacy chains across the country, the defendants implemented discounted drug programs which offer thousands of commonly prescribed

6

before applying their program's discount. Because the discounted price is the amount charged to "non-Medicaid" or "cash paying" patients, the State argues that the pharmacies should report these lower, discounted amounts as their UC prices for the drugs on the discount drug list. Instead, the defendants have continued to report much higher UC prices than their everyday discounted prices, causing Mississippi Medicaid to reimburse the pharmacies at a much higher rate.

¶8. The State claims that by disregarding the everyday, discounted prices regularly charged to private-pay, non-Medicaid patients, the defendants have continued to submit false UC prices, amounting to fraudulent claims for reimbursement, causing the State to remit excessive Medicaid payments to the pharmacies. The State argues that by knowingly and willingly submitting these inaccurate prices, and then fraudulently concealing the true UC prices for the drugs, the defendants violated the Mississippi Medicaid Fraud Act (Mississippi Code Section 43-13-201, *et seq.*), causing the State to suffer actual damages.

¶9. Further, the State argues these same actions constitute unfair and deceptive practices in violation of the State's Consumer Protection Act (Mississippi Code Section 75-24-1, *et seq.*). Because the defendants knew or should have known that the State would rely on their misrepresentation of the UC prices, their deceptive practices caused the State to suffer actual damages in the form of gross overpayments for prescription drugs. The State requests relief from this burden under Mississippi Code Sections 75-24-9 and 75-24-11, praying for restitution, civil penalties, and injunctive relief.

---

drugs at prices ranging from $4 to $15. These prices are offered to customers regardless of Medicaid participation.

¶10. Citing the defendants' misrepresentations and the damage caused by their inflation of their UC prices, the State also presents claims of fraud and unjust enrichment. As a result, the State requests restitution under both claims.

¶11. Of note is the State's prayer for relief, which has become the impetus for the jurisdictional arguments on appeal. The State requested that the chancery court grant the following relief against the defendants:

(1) an order enjoining the Defendants from continuing the fraudulent, deceptive and/or unfair acts or practices complained of herein, and requiring correcting measures;

(2) an award of compensatory damages to the State in such amount as is proved at trial;

(3) an award of actual damages;

(4) an award of all civil penalties provided for by statute;

(5) an award of punitive damages;

(6) an accounting of all profits or gains derived in whole or in part by the Defendants through their fraudulent, unfair and/or deceptive acts or practices complained of herein;

(7) a constructive trust of the moneys illegally and impermissibly obtained from the Defendants' scheme;

(8) an order imposing a constructive trust on and/or requiring disgorgement by the Defendants of all profits and gains earned in whole or in part through the fraudulent, unfair and/or deceptive acts or practices complained of herein;

(9) an award of attorney fees, costs, and prejudgment interest; and

(10) such other and further relief as the Court may deem appropriate and just.

With a combination of equitable and legal requests–including injunctive relief, a constructive trust, and actual and punitive damages–the State filed this complaint in the DeSoto County Chancery Court, alleging proper venue and jurisdiction based on the defendants' ties to Mississippi, the business regularly conducted in DeSoto County, and the power provided through Mississippi Constitution Article VI, Section 159.[4]

## II.    Procedural History

¶12.    The defendants timely responded to the September 30, 2016, complaint with individual answers and motions to transfer the suits to circuit court.   In their motions to transfer, the defendants argued that jurisdiction is proper in the DeSoto County Circuit Court because the State's complaint primarily seeks legal relief through legal claims and arguments.   Additionally, they claimed that failing to transfer the matter to circuit court would deprive the pharmacies of their constitutional right to a jury trial.[5]

---

[4]The chancery court shall have full jurisdiction in the following matters and cases, viz.:
(a) All matters in equity;
(b) Divorce and alimony;
(c) Matters testamentary and of administration;
(d) Minor's business;
(e) Cases of idiocy, lunacy, and persons of unsound mind;
(f) All cases of which the said court had jurisdiction under the laws in force
when this Constitution is put in operation.

Miss. Const. art. 6, § 159.

[5] Alternatively, Fred's claims that if the court fails to find that the circuit court has jurisdiction over the suit, then the DeSoto County Chancery Court is the inappropriate venue and the matter against the pharmacy should be transferred to the Lauderdale County Chancery Court.

¶13. In their motion-briefs, the defendants supported their arguments for transfer by distinguishing the coverage of two courts. Noting the chancery's limited jurisdiction, the defendants explained that the general jurisdiction of the circuit court is a better forum for the legal claims at issue. The defendants argued that, because the State's requested relief is not purely equitable and is connected to a contractual relationship, retaining the action in the chancery court would deprive the defendants of their right to a jury trial simply by a choice of forum. Arguing that the "driving thrust of the State's action is to recover money damages," the defendants asserted that, regardless of the State's equitable claims for injunctive relief and a constructive trust, the substance of the amended complaint requires that the case proceed in the circuit court.

¶14. Importantly, the defendants asserted that, although the State's complaint does not specifically include a count for breach of contract, a careful and comprehensive review shows that the State's allegations clearly are connected to a contractual relationship or other claims tied to questions of law. The defendants used this conclusion to argue that the court should look to the substance of the State's complaint, identifying the legal nature of its claims, and allowing the matter to proceed before a circuit court jury.

¶15. Finding these arguments convincing, Judge Lundy granted the defendants' request on February 16, 2017. In his order, the chancellor acknowledged that, although the State seeks some equitable relief from the court, the substance of its claims involve the recovery of compensation through actual and punitive damages. With deference to the Mississippi Constitution's inviolate right to a "trial by jury" (Miss. Const. art. 3, § 31), the judge found

10

that when claims are connected to a contractual relationship or are otherwise tied to a question of law, such questions of both law and equity are more appropriately presented in circuit court. With the substance of the State's complaint being legal with ancillary equity claims, the judge ordered the matter to be transferred from his court.

¶16. Aggrieved, the State filed a motion for reconsideration of the court's order transferring venue to the DeSoto County Circuit Court.[6] The State reiterated that it was not asserting a breach of contract, but only that the pharmacies had violated Mississippi statutory and common law by presenting fraudulent claims to the State for reimbursement. The State argued that, while a contract may exist, it never pleaded any facts necessary to establish a breach-of-contract cause of action, and that relying on the absence of such facts to establish jurisdiction in the circuit court is inappropriate.

¶17. Notably, the State included citation to Mississippi Code Section 75-24-9 in its argument for reconsideration, averring that under this statute, the chancellor's transfer of the matter to the circuit court served to deprive the Attorney General of his constitutional authority to seek an injunction under the Mississippi Consumer Protection Act (MCPA). Citing this Court's decision in *State of Mississippi v. McKesson Corp.*, No. 2011-M-01066 (Miss. Dec. 15, 2011) for support, the State claimed that it is constrained to file its MCPA injunction anywhere other than chancery court. Arguing that the statute is jurisdictional, the

---

[6] Interestingly, the parties dispute whether the transfer to circuit court was one of venue or jurisdiction. While the chancellor's order mentioned neither venue nor jurisdiction in his explanation of the transfer, the court's docket referred to the order as one transferring venue. The State alleges that the chancellor's transfer was jurisdictional while the defendants argue that the order was made for purposes of venue.

11

State claimed that for the Attorney General to seek relief under the MCPA, the statutes and the Mississippi Supreme Court require that such claims must be presented in chancery court, and nowhere else.

### III.    Interlocutory Appeal

¶18.    After thirty days, the chancery court failed to rule on the State's motion for reconsideration and the request was deemed denied on March 29, 2017.  Three weeks later, the State filed its petitions for interlocutory appeal.  While many of the issues raised by the State were identical to those presented at the trial level, one new issue–not discussed by the chancellor[7]–was more thoroughly detailed by the State on appeal: whether Mississippi Code Section 75-24-9 is jurisdictional and establishes the Attorney General's authority to seek an MCPA injunction in the chancery court.  This is the central issue which governs our analysis below.

### ANALYSIS

**I.    Does the chancellor's decision to transfer the State's case to the circuit court conflict with the statutory requirement and the Mississippi Supreme Court's ruling that the Attorney General shall seek injunctive relief under the Mississippi Consumer Protection Act in chancery court?**

---

[7] The defendants argue that because the chancellor did not address this issue, it is not properly before the Court on appeal. The State did, however, include the argument in its motion for reconsideration. The motion was deemed denied without response from the chancellor after thirty days had passed without an order from the court.  Further, the State briefly recited the language of Section 75-24-9 during argument on the defendant's motion to transfer. Although the *McKesson* order was not mentioned at the hearing, the core argument was presented for the chancellor's review and is properly before this Court.

¶19.    In its briefs on appeal, the State reiterates that it seeks both legal and equitable remedies through the Attorney General.  Because both remedies exist in a single action, jurisdiction properly rests in either chancery or circuit court.  *See* Miss. Const. art. 6, § 157, 162.  However, because the complaint was filed by the Attorney General and involves a claim for injunctive relief, the jurisdictional provision of the MCPA under Mississippi Code Section 75-24-9 dictates that such an action *shall* be brought in chancery court in certain counties. The state argues that, by transferring the matter to the circuit court, the chancellor ignored the mandates of Section 75-24-9, dismissed this Court's holding in **State of Mississippi v. McKesson Corporation**, and effectively stripped the Attorney General of his ability to enforce provisions of the MCPA.

*A.      Standard of Review*

¶20.    The State's first issue on interlocutory appeal asks both jurisdictional and statutory questions.  "Jurisdiction is a question of law which this Court reviews *de novo*."  **Germany v. Germany**, 123 So. 3d 423, 427 (Miss. 2013) (citing **Trustmark Nat'l Bank v. Johnson**, 865 So. 2d 1148, 1150 (Miss. 2004)).  Accordingly, "[t]he standard of review for a ruling on a motion to transfer from chancery court to circuit court, or vice-versa, for lack of subject-matter jurisdiction is also *de novo*."  **Id.** (citing **Union Nat'l Life Ins. Co. v. Crosby**, 870 So. 2d 1175, 1178 (Miss. 2004)).  In issues concerning statutory interpretation, this court applies the *de novo* standard, as well.  **Nelson v. City of Horn Lake ex. rel. Bd. of Aldermen**, 968 So. 2d 938, 942 (Miss. 2007).  Therefore, we review the matter, in its entirety, *de novo*.

*B.      Section 75-24-9 and the Court's **McKesson** Order*

13

¶21. To illustrate their position that the chancellor erred by transferring the matter to the circuit court, the State reiterates that the chancery court "shall have full jurisdiction [over] . . . [a]ll matters in equity." Miss. Const. art. 6, § 159. Although the chancery court enjoys limited jurisdiction, *see* **Hall v. Corbin**, 478 So. 2d 253, 255 (Miss. 1985), the State argues that the chancery court is permitted to exercise jurisdiction over cases involving both legal and equitable relief. *See* **Leaf River Forest Prods., Inc. v. Deakle**, 661 So. 2d 188, 193 (Miss. 1995) ("Where the chancery court has exercised its equity jurisdiction, it may proceed to a complete adjudication of the suit and award all appropriate legal and equitable remedies."). Here, because the chancery court is situated properly to adjudicate fully the several equitable matters in this action, the State claims that the court may proceed to adjudicate all other legal questions as well. Moreover, because the chancery court is particularly suited to address the State's requests for an injunction, statutory civil penalties, a constructive trust, and an accounting of all profits/gains, the State argues that its additional request for legal damages should in no way divest the chancery court of its proper jurisdiction.

¶22. To further support its appeal, the State claims that Mississippi Code Section 75-24-9 requires the case to move forward in chancery court. The statute provides that

> Whenever the Attorney General has reason to believe that any person is using, has used, or is about to use any method, act or practice prohibited by Section 75-24-5, and that proceedings would be in the public interest, he may bring an action in the name of the state against such person to restrain by temporary or permanent injunction the use of such method, act or practice. ***The action shall be brought in the chancery or county court of the county in which such person resides or has his principal place of business, or, with consent of the parties, may be brought in the chancery or county court of the county in***

14

*which the State Capitol is located.* The said courts are authorized to issue temporary or permanent injunctions to restrain and prevent violations of this chapter, and such injunctions shall be issued without bond.

Miss. Code Ann. § 75-24-9 (Rev. 2016) (emphasis added). Titled "Injunctive Relief," this section of the MCPA provides for the Attorney General's authority to prevent the "unfair methods of competition and unfair or deceptive trade practices" prohibited by the Act. Miss. Code Ann. § 75-24-5 (Rev. 2016). The State claims that, through this provision, the jurisdiction conferred upon the chancery court by the equitable claims in the suit is also *required* through this mandate of the MCPA.

¶23. The State concedes that the statute involves some language pertaining to venue, though it argues that the provision ultimately establishes the Attorney General's statutory authority to seek MCPA injunctions, exclusively in either county or chancery court. It claims that by moving the matter to the circuit court, the Attorney General will no longer be able to seek an injunction under the Act, and his constitutional authority to seek remedies for the citizens of this state will be stripped from his hands and absorbed by the court. According to the State, this makes the circuit court an impermissible option under the law.

¶24. To support this argument, the State cites this Court's order and ruling in *State of Mississippi v. McKesson Corp.*, No. 2011-M-01066 (Miss. Dec. 15, 2011). There, the Attorney General filed a claim for injunctive relief in the circuit court under the MCPA, though he made no direct claim for an injunction under Section 75-24-9. In an order authored by now-Presiding Justice Kitchens, the Court denied McKesson's petition to

transfer the matter to the chancery court, and instead dismissed the State's claims for injunctive relief and ordered the matter to proceed in circuit court.

¶25.    Much like this case, the issues on interlocutory appeal in *McKesson* surrounded whether the circuit or chancery court assumed jurisdiction over an injunction filed by the Attorney General under the provisions of the MCPA. Unlike this case, however, the Court found that the State claimed equitable relief in the form of an injunction, though it never actually requested that the trial court grant an injunction against the defendant. Finding that the State's complaint had failed to request the appropriate action from the trial court, the Court determined that the State had abandoned its MCPA claim and thereby ordered the case to proceed in circuit court without the ill-pleaded injunctive requests.

¶26.    The State argues that this order supports the position that if an injunction is requested under Section 75-24-9, it must be filed in the chancery court. We find the State's argument misses the mark and that the *McKesson* order does nothing to support either party's position on appeal. While the underlying issues and the question before the Court were the same as those presented today, the *McKesson* Court properly moved past the issue of whether the statute required the case to be transferred and instead issued a ruling dismissing the improperly pleaded counts in the State's complaint. This decision answered the question of whether that matter should be transferred without actually determining whether the statute required the matter to be heard in chancery court. The *McKesson* order simply is not applicable to the matter before us.

16

¶27. Turning to the language of the statute, the defendants argue that Section 75-24-9 does not require the action to remain in chancery court because it concerns *venue*, not *jurisdiction*. As distinct matters, *venue* refers to the place where an action is to be heard and is largely a function of statute. M.R.C.P. 82. *Jurisdiction*, however, is governed by the Mississippi Constitution. *See* Miss. Const. art. 6, § 156, 157, 159-62. The defendants claim that nothing in the statute's text or its legislative history suggests the provision is anything more than a venue statute. Instead, the statute presumes that such equitable claims will be brought in the state's court of equity and indicates not whether chancery court should have jurisdiction, but *which county's* chancery court shall have venue over the matter.

¶28. Although we find this explanation deficient in some respects, we agree that the statute does nothing more than presume that an MCPA injunction, standing alone, will be filed in county or chancery court. Through the Mississippi Constitution, the chancery court's jurisdiction is limited to specific areas, including "all matters in equity." Miss. Const. art. 6, § 159 (a). As a result, injunctions like the one in question must be filed in the chancery court. Here, jurisdiction would attach through the equitable claims presented by the State, including the Section 75-24-9 injunction request. However, as the defendants correctly point out, when the complaint is considered as a whole, the thrust of the State's case clearly is legal in nature, restricting the limited jurisdiction of the chancery.

¶29. We recognize the importance of the State's request for remedies, including an accounting and a constructive trust, which typically require the chancellor's equitable review, and we certainly do not intend to devalue that importance here. But an application of the

17

State's equitable claims is not enough to limit jurisdiction to the chancery court; not even through the application of Section 75-24-9. We have held that chancery courts maintain "the discretion to award legal and even punitive damages as long as" their jurisdiction has attached. *Southern Leisure Homes, Inc. v. Hardin*, 742 So. 2d 1088, 1090 (Miss. 1999). Though, in matters like the one before us today, "it is more appropriate for a circuit court to hear equity claims than it is for a chancery court to hear actions at law since circuit courts have general jurisdiction but chancery courts enjoy only limited jurisdiction." *McDonald's Corp. v. Robinson Indus., Inc.*, 592 So. 2d 927, 934 (Miss. 1991); *see also Hardin*, 742 So. 2d at 1090; *Union Nat'l Life Ins. Co. v. Crosby*, 870 So. 2d 1175, 1182 (Miss. 2004).

¶30.    We reiterated this position in *Era Franchise Systems, Inc. v. Mathis*, 931 So. 2d 1278 (Miss. 2006). There, we noted that "equitable claims are more appropriately brought before a circuit court when they are connected to a contractual relationship or other claims tied to questions of law." *Mathis*, 931 So. 2d at 1283 (citing *Copiah Med. Assocs. v. Mississippi Baptist Health Sys.*, 898 So. 2d 656, 661 (Miss. 2005); *Crosby*, 870 So. 2d at 1175; *RE/Max Real Estate Partners v. Lindsley*, 840 So. 2d 709 (Miss. 2003)). In *Mathis*, Venit Mathis filed a complaint against multiple defendants alleging various claims, framed as a derivative action on behalf of REP–an organization in which he alleged to have a fifty-percent stake. Like the State in the matter before us, Mathis pleaded several causes of action and prayed for both legal and equitable relief. After the chancery court determined that it would be best to bifurcate the action, leaving the equitable claims in chancery court and transferring the legal claims to the circuit court, the defendants appealed. This Court reviewed the matter and

18

determined that the chancellor had committed reversible error. *Mathis*, 931 So. 2d at 1283-1284. Following our holding in *Crosby* (stating that where a complaint seeks both actual and punitive damages, the "remedy is clearly legal rather than equitable in nature," *Crosby*, 870 So. 2d at 1179), we determined that the circuit court's general jurisdiction is better suited to try a case when doubt exists as to whether the claims are equitable or legal. *Mathis*, 931 So. 2d at 1282 (citing *Burnette v. Hartford Underwriters Ins. Co.*, 770 So. 2d 948, 952 (Miss. 2000)). Finding that Mathis's action revolved around issues stemming from contractual obligations not met by the defendants, we reversed the chancellor's decision denying the defendant's motion to transfer the matter to the circuit court. *Id.* at 1283.

¶31. Similarly, in the often-cited *Crosby* case, the plaintiffs brought an action to recover against the defendants for several common-law and statutory claims[8] arising out of sale of insurance policies and allegedly exorbitant premiums. *Crosby*, 870 So. 2d 1175 (Miss. 2004). Although the plaintiffs requested a constructive trust, an accounting, and injunctive relief, the defendants claimed that the complaint sounded in tort and contract law–not equity–and requested the case be transferred to circuit court. Reviewing the matter on interlocutory appeal, this Court reversed the chancellor's denial of the defendant's motion to transfer, and determined that "each and every one of Crosby's claims, even the equitable claims of unjust enrichment and constructive trust, arise from the sale and alleged breach of an insurance contract." *Id.* at 1182. We noted that an argument alleging otherwise

---

[8] Claims included fraud, fraudulent inducement, breach of duty of good faith and fair dealing, tortuous breach of contract, breach of fiduciary duty, assumpsit, unjust enrichment, negligence, gross negligence, violation of the MCPA, and conversion.

19

> ignores the fact that, unless there was a contractual relationship between Union National and Crosby, she would have no claims arising from the sales, administration and service of the insurance policy. . . .The alleged mismanagement and misappropriation of premium money concerns Crosby's contractual duty to pay for the insurance policy and Union National to provide her coverage.

*Id*.

¶32. This analysis is directly applicable to the State's claims against the pharmacies. While it is true that the State's complaint does not plead the facts necessary to establish a breach-of-contract cause of action, we must look to "the substance, and not the form" of the claims in our resolution of a matter. ***Copiah Med. Assocs.***, 898 So. 2d at 661. With the State's single theory of wrongdoing arising from the defendant's obligations under the Medicaid provider agreements, the State's decision to omit a breach-of-contract claim in no way affects the complaint's substance: the claims asserted and the relief requested present legal arguments and legal remedies. Moreover, much like ***Crosby*** and ***Mathis***, the heart of the complaint concerns a provider agreement (a contract), its terms, and the parties who failed to abide by the arrangement. While the equitable issues pleaded are relevant and not to be ignored, the legal issues which flowed from the pharmacies' alleged inflated reimbursement requests predominate the State's claims and requests for relief. As a result, jurisdiction properly lies in the circuit court.

¶33. Putting aside the State's requests for restitution, accountings, constructive trusts, and injunctions, the complaint prays for millions of dollars in actual and punitive damages based on the defendants' alleged unwillingness to comply with the signed provider agreements. Whether the State disagrees that the basis of these complaints sounds in contract is of no

moment. Rather, as most of the claims are legal in nature, the circuit court is the appropriate forum to rule on the matter.

¶34. This decision in no way strips the Attorney General of his constitutional authority to pursue an injunction. Rather, it allows the State fully and fairly to pursue all claims against the defendants, while providing the defendants with an opportunity to have those issues presented to a jury.[9] The State, therefore, should fully and ably proceed with its complaint in circuit court.

> C. *Whether a Section 75-24-9 injunction may be obtained*
> *in the circuit court.*

¶35. As noted above, chancery courts of this state are permitted to hear such legal claims when accompanied by equitable issues, though an application of the circuit court's pendant jurisdiction is particularly consequential in this action: a jury trial is warranted in this high-stakes suit and only the circuit court can ensure the defendant's jury request is granted. We find that, through a proper application of his discretion, the chancellor did not err in his decision to transfer the matter, and any apparent conflict with this decision and the Section 75-24-9 provision is inconsequential. Accordingly, an injunction under Mississippi Code Section 75-24-9 may be obtained in circuit court when the original court or the transferring court considers it appropriate under the circumstances.

---

[9]*See Riverboat Corp. of Mississippi v. Harrison Cty. Bd. of Supervisors,* 198 So. 3d 289 (Miss. 2016), *and Edmonds v. State*, 234 So. 3d 286 (Miss. 2017) (confirming that the right to a jury trial exists in civil matters). *See also KD Hattiesburg 1128, Inc. v. Turtle Creek Crossing, LLC,* 237 So. 3d 157, 164 (Miss. 2018) (affirming the circuit court's retention of the matter and resolving that the plaintiff's "right to a jury trial would be infringed upon if this case were heard in chancery court").

21

## II. Did the DeSote Chancery Court's failure to grant the State's Motion for Reconsideration constitute an abuse of discretion?

¶36.    In its second issue, the State claims that the chancery court's refusal to reverse its decision transferring the matter to circuit court was an abuse of discretion. Reiterating claims that the language of Mississippi Code Section 75-24-9 unambiguously confers jurisdiction on the chancery court, and that the Court in *McKesson* reenforced this fact in its 2011 order, the State claims that the trial court erred and its decision should be reversed.

¶37.    The grant or denial of a motion for reconsideration is reviewed under an abuse-of-discretion standard. *City of Jackson v. Internal Engine Parts Grp., Inc.*, 903 So. 2d 60, 66 (Miss. 2005). Mississippi Rule of Civil Procedure 60(c) provides that a Rule 60 motion shall be deemed denied if the "court fails to rule on the motion for reconsideration within thirty (30) days of the date of filing," M.R.C.P. 60(c). Under this rule, the party making the motion must make clear that any disputed order contains either clerical mistakes to be corrected by the court, or other inadvertent mistakes, newly discovered evidence, fraud, or other specifically outlined errors. M.R.C.P. 60(a), (b).

¶38.    Having reviewed the State's motion for reconsideration, it is clear that the motion is largely a regurgitation of the claims made in its complaint and at the hearing on the defendant's motion to transfer. Accordingly, we find that the chancellor's denial of the State's motion was well within his discretion.

### CONCLUSION

¶39.    Applying its broad discretionary powers, the DeSoto County Chancery Court properly determined that a jury trial was appropriate in this case and transferred the matter to the

22

circuit court for resolution. Such a decision did not strip the Attorney General of his power to pursue an injunction under the MCPA, and he may pursue such a claim in the circuit court. Accordingly, the chancellor's order is affirmed.

¶40. **AFFIRMED AND REMANDED.**

**WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., KING, COLEMAN, MAXWELL, CHAMBERLIN AND ISHEE, JJ., CONCUR.**