# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00580-COA

GREGORY MERIDIAN ACQUISITION, LLC
D/B/A BMW OF MERIDIAN AND BABS
HAIRSTON

APPELLANTS

v.

FRANCES McFARLAND

APPELLEE

DATE OF JUDGMENT: 03/29/2022
TRIAL JUDGE: HON. CHARLES W. WRIGHT, JR.
COURT FROM WHICH APPEALED: CLARKE COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANTS: J. RICHARD BARRY
GEORGE ELLIS ABDO III
ROBERT WILLIAM ARLEDGE
MARK C. CARROLL
RIMEN BRAR SINGH
ATTORNEYS FOR APPELLEE: WILLIAM C. HAMMACK
CHRISTOPHER MICHAEL FALGOUT
KATE SPRABERY DAVIS
NATURE OF THE CASE: CIVIL - CONTRACT
DISPOSITION: AFFIRMED AND REMANDED - 11/07/2023
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., GREENLEE AND LAWRENCE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     The instant case involves an alleged contract formed between Frances McFarland and

Gregory Meridian Acquisition LLC ("BMW") with its employee Babs Hairston, acting as

its sales agent, for the sale of a vehicle. In 2021, McFarland filed suit against both BMW and

Hairston after making payments on a vehicle she never received. BMW filed a motion to

dismiss or, alternatively, to compel arbitration. Hairston joined in the motion. The trial court

entered an order denying this motion. BMW then filed a motion for reconsideration, which

was also denied.  BMW appeals.  Upon review, we affirm and remand.

## FACTUAL BACKGROUND

¶2.     Frances McFarland of Quitman, Mississippi, was interested in purchasing a vehicle in the fall of 2019.  Following a referral from a friend, McFarland contacted salesperson Babs Hairston with BMW of Meridian.  Hairston soon found a used Mercedes-Benz and brought the vehicle to McFarland's home on September 5, 2019.  After a ride around town, McFarland indicated to Hairston that she wanted to purchase the vehicle.  McFarland also informed Hairston that she was scheduled to depart Mississippi in the coming days for a surgery and an extended rehabilitation scheduled in Alabama.

¶3.     On the following day, Hairston brought documents to McFarland's home requesting her signature.  McFarland stated that "Hairston presented the documents . . . without explanation and showed [her] where to sign. [Hairston] said there were other documents which she could take care of handling."  Hairston also told McFarland "not to include [her] middle initial" when signing and "did not give [McFarland] copies of the documents[.]"  McFarland, in her sworn statement, stated that she does not know which documents Hairston presented for her to sign that day.  The documents were allegedly signed by BMW through a now-deceased dealership representative with whom McFarland never made any direct contact.  The dealership did not contact McFarland to verify that she actually signed the documents.

¶4.     Initially, the vehicle was not delivered to McFarland.  Hairston advised that it was

2

being serviced in Jackson and would be retained by BMW of Meridian until McFarland returned from her surgery. McFarland's stay in Alabama lasted approximately one month. When she returned to her home, the vehicle still had not been delivered. McFarland continued making monthly payments on the vehicle until January 2020 when she ceased all payments and contacted the offices of both the Attorney General and the Clarke County Sheriff. Following McFarland's complaints, the sheriff's office conducted an investigation and discovered the vehicle was at Hairston's residence.

## PROCEDURAL HISTORY

¶5. On September 2, 2021, McFarland filed suit against BMW and Hairston in the Clarke County Circuit Court.[1] BMW filed a motion to dismiss or, alternatively, to compel arbitration or stay the proceedings on October 6, 2021. Hairston joined that motion in January 2022, additionally requesting that the court stay proceedings because she had been indicted and arraigned for motor vehicle theft due to her actions in the instant set of facts. McFarland responded to BMW and Hairston's motion asserting that she did not sign an arbitration agreement, and thus arbitration could not be compelled. She attached a sworn affidavit to her response, stating that upon reviewing documents released to her attorney from BMW, she was "convinced" that multiple documents "were not signed by [her]."

¶6. The circuit court held a hearing on the matter and entered an order detailing its

---

[1] The complaint alleged fraud, negligence, abuse of a vulnerable adult, breach of fiduciary duty, breach of the implied duty of good faith and fair dealing, gross negligence, and unjust enrichment. McFarland requested relief in the form of punitive damages.

3

findings on March 29, 2022. In short, the court found that BMW and Hairston had failed to prove that an arbitration agreement existed with McFarland and denied their motion. BMW filed a motion to reconsider with the trial court. Another hearing was held, and the motion was denied on May 25, 2022.

## ANALYSIS

¶7. BMW and Hairston now appeal, alleging that the issue of whether an arbitration agreement existed is not for the trial court to decide and that their motion for reconsideration requesting limited discovery should have been granted.[2]

### I. Motion to Dismiss or Compel Arbitration

¶8. As for BMW's first argument, whether a party is bound by an arbitration agreement is generally considered an issue for the courts, not the arbitrator, "[u]nless the parties clearly and unmistakably provide otherwise." *Greater Canton Ford Mercury Inc. v. Ables*, 948 So. 2d 417, 422 (¶12) (Miss. 2007) (quoting *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)). This exception requires that the parties "explicitly agree[] that the question of arbitrability is to be decided by an arbitrator rather than the court." *Id.* BMW contends that its arbitration agreement with McFarland did just that, stating that "any claim

---

[2] This opinion will address the trial court's orders denying the motion to compel arbitration and denying BMW's motion for reconsideration. *See Ford v. Miss. Dep't of Hum. Servs.*, 158 So. 3d 1241, 1244 (¶8) (Miss. Ct. App. 2015) ("[A] notice of appeal following the denial of a Rule 59 motion to reconsider encompasses both the denial of reconsideration and the underlying judgment." (quoting *Woods v. Victory Mktg. LLC*, 111 So. 3d 1234, 1236 (¶7) (Miss. Ct. App. 2013))).

4

or dispute . . . including the arbitrability of the claim of dispute . . . shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action."[3]  However, McFarland asserts that her signature was forged on the contract and the arbitration agreement.  "Under Mississippi law, to determine whether a valid arbitration agreement exists when a party objects to arbitration of a claim because it has not signed an agreement to arbitrate, the threshold question a court must consider is whether that party entered into a contractual agreement to arbitrate." *JP&G LLC v. Voss*, 331 So. 3d 569, 579 (¶20) (Miss. Ct. App. 2021) (quoting *Hancock Mech. LLC v. McClain Contracting*, No. 1:17cv54-HSO-JCG, 2018 WL 702687, at *3 (S.D. Miss. Feb. 2, 2018)).  We must first address whether an agreement to arbitrate existed.

¶9.     Generally, we apply a two-prong inquiry to determine whether a party is bound to arbitration.  *Belhaven Senior Care LLC v. Smith*, 359 So. 3d 612, 616 (¶10) (Miss. 2023) (citing *E. Ford Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002)).  The first prong asks two questions: whether there is a valid arbitration agreement, and whether the parties' dispute is

---

[3] The full clause reads:

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision and the arbitrability of the claim or dispute), between you or us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

in the scope of that agreement. *Id.* If both questions are answered in the affirmative, we progress to the second prong and ask "whether legal constraints external to the parties' agreement foreclosed arbitration of those claims." *Id.*

¶10. In determining whether a valid arbitration agreement between parties exists, this Court applies the law of contracts. *Adams Cmty. Care Ctr. LLC v. Reed*, 37 So. 3d 1155, 1158 (¶7) (Miss. 2010) (citing *Grenada Living Ctr. LLC v. Coleman*, 961 So. 2d 33, 36-37 (Miss. 2007)). The elements necessary to form a contract are the following: "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *Coleman*, 961 So. 2d at 37 (¶9) (citing *Rotenberry v. Hooker*, 864 So. 2d 266, 270 (Miss. 2003)).

¶11. McFarland contends that she did not assent to the contract or arbitration agreement. Her initial complaint alleged that she "believe[d] that her signature [was] forged[.]" BMW and Hairston's motion to dismiss or compel arbitration contained *nothing* denying or refuting this allegation. In fact, the motion did not mention the assertion at all, instead only vaguely referring to McFarland's complaint "alleging fraud."[4] The motion concluded that McFarland

---

[4] The only response to McFarland's forgery claim was contained in a supplemental reply later filed by BMW, asserting that the claim was one of fraud and, thus, required clear and convincing evidence. While it is true that an allegation of forgery is one of fraud, *see St. Dominic Ambulatory Surgery Ctr. LLC v. Shaffer*, 329 So. 3d 509, 515 (¶14) (Miss. Ct. App. 2021), McFarland's burden for pleading fraud does not cancel out BMW's burden to prove that an arbitration agreement existed. Further, BMW did not file its motion to dismiss based on a failure to plead with particularity. That motion only asked for dismissal

had "signed a valid agreement to arbitrate" and "clearly and unmistakably agreed to delegate any questions of arbitrability to the arbitrator."

¶12. McFarland responded to the motion to compel arbitration, arguing that she could not be bound to the terms of an agreement that she did not sign. She additionally submitted, under penalty of perjury, a signed and sworn affidavit stating that after reviewing the documents, she was "convinced that among other documents, the Retail Installment Contract – Simple Finance Charge (with Arbitration Provision) and the separate Arbitration Agreement . . . were not signed by [her]."[5] BMW largely argued in response that the question of whether McFarland was bound to arbitration should be reserved for the arbitrator. The response did not contain any evidence to contradict McFarland's affidavit.

¶13. The trial court explained in its order denying the motion to compel arbitration that the parties *seeking to invoke* arbitration (BMW and Hairston) bear the burden of establishing an agreement existed. *KPMG, LLP v. Singing River Health Sys.*, 283 So. 3d 662, 674 (¶34) (Miss. 2018) (quoting *Wellness Inc. v. Pearl River Cnty. Hosp.*, 178 So. 3d 1287, 1292 (¶14) (Miss. 2015)). BMW and Hairston failed to prove an arbitration agreement existed by failing to provide any proof or argument in its favor that McFarland's signature was authentic. The only proof the trial court was given on the issue was McFarland's affidavit, thus leading it

"pursuant to Rule 12(b)(1)(2)(3) and Rule 82" because the trial court allegedly did not have jurisdiction over the case or parties and was not the proper venue for the case.

[5] BMW refers to this affidavit throughout its brief as McFarland's "self-serving affidavit."

7

to the only conclusion possible—that her signature was forged. Accordingly, the trial court denied the motion.

¶14. When a trial court rules on a motion to compel arbitration, "we review the trial judge's factual findings under an abuse-of-discretion standard, and we conduct a de novo review of all legal conclusions." *Magee Cmty. Care Ctr. LLC v. Perkins*, 333 So. 3d 34, 39 (¶13) (Miss. Ct. App. 2021) (internal quotation marks omitted) (quoting *Virgil v. Sw. Miss. Elec. Power Ass'n*, 296 So. 3d 53, 59 (¶11) (Miss. 2020)). This Court's "sole function is to determine whether the claim is referable to arbitration[, and] . . . [w]e will not consider or weigh the merits of the dispute itself." *Slater-Moore v. Goeldner*, 113 So. 3d 521, 525 (¶6) (Miss. 2013) (citing *Terminix Int'l Inc. v. Rice*, 904 So. 2d 1051, 1054-55 (Miss. 2013); *IP Timberlands Op. Co., Ltd. v. Denmiss Corp.*, 726 So. 2d 96, 108 (Miss. 1998)).

¶15. The only "proof" we are given in support of finding an arbitration agreement is the agreement containing McFarland's signature—one she claims was forged. The trial court had *no* evidence contradicting the assertion in McFarland's affidavit that the signature was forged. The trial court ruled on the evidence before it. BMW did not attach any affidavits to its motion to dismiss or compel arbitration. Further, after McFarland filed a written response to BMW's motion with an affidavit attached, BMW did nothing but make legal arguments to the court at the hearing on the motion. They attached no supplemental motions or affidavits. Therefore, at the hearing on BMW's motion to dismiss or compel arbitration, the trial court had no evidence that a meeting of the minds between McFarland and BMW

8

took place. *Liberty Nat'l Life Ins. Co. v. Hancock*, 396 So. 3d 66, 69 (¶21) (Miss. Ct. App. 2023) ("To have a valid contract, there must be a meeting of the minds of the parties.") (quoting *King Metal Bldgs. Inc. v. Renasant Ins. Inc.*, 159 So. 3d 567, 573 (¶20) (Miss. Ct. App. 2014)). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Miss. Care Ctr. of Greenville LLC v. Hinyub*, 975 So. 2d 211, 214 (¶6) (Miss. 2008) (quoting *EquiFirst Corp. v. Jackson*, 920 So. 2d 458, 461 (¶9) (Miss. 2006)). We find that the trial court did not abuse its discretion in making the factual conclusion that McFarland had not signed the arbitration agreement. We affirm the trial court's decision to deny the motion to compel arbitration.

## II.     Motion for Reconsideration

¶16.    Additionally, BMW claims that the trial court's order denying the motion for reconsideration was made in error. "The grant or denial of a motion for reconsideration is reviewed under an abuse-of-discretion standard." *State v. Walgreen Co.*, 250 So. 3d 465, 477 (¶37) (Miss. 2018) (citing *City of Jackson v. Internal Engine Parts Grp. Inc.*, 903 So. 2d 60, 66 (¶19) (Miss. 2005)). BMW's motion for reconsideration was filed pursuant to Mississippi Rule of Civil Procedure 59.[6] That Rule provides, "a party may only obtain relief upon

---

[6] The Mississippi Rules of Civil Procedure provide two different methods for reconsideration of a trial court's decision: filing a "motion for a new trial to alter or amend under Rule 59 or (2) fil[ing] for relief from a final judgment under Rule 60(b)." *Woods v. Victory Mktg. LLC*, 111 So. 3d 1234, 1236 (¶6) (Miss. Ct. App. 2013) (citing M.R.C.P. 59, 60(b)). "The timing of the motion to reconsider determines whether it is a Rule 59 or 60(b) motion." *Id.* BMW filed its motion within ten days of the entry of the trial court's order.

showing: (1) an intervening change in controlling law, (2) availability of new evidence not previously available, or (3) the need to correct a clear error of law or to prevent manifest injustice." *Fowler v. White*, 85 So. 3d 287, 292 (¶18) (Miss. 2012) (quoting *Rankin v. Am. Gen. Fin.*, 912 So. 2d 725, 727 (¶8) (Miss. 2005)); *accord* M.R.C.P. 59.

¶17.    This motion for reconsideration largely relied on BMW "secur[ing] the services of an expert [in] questioned documents including handwriting" who "w[ould] show in his [a]ffidavit" that it was his opinion that McFarland's signature was authentic.[7] This certainly does not allude to an "intervening change in controlling law." Likewise, it is not new evidence. In terms of a Rule 59 motion based on newly discovered evidence,

> [t]he motion may not be granted unless (1) the evidence was discovered following the trial; (2) due diligence on the part of the movant to discover the new evidence is shown or may be inferred; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; (5) the evidence is such that a new trial would probably produce a new result.

*McNeese v. McNeese*, 119 So. 3d 264, 272 (¶20) (Miss. 2013) (quoting *Smullins v. Smullins*, 77 So. 3d 119, 125 (¶23) (Miss. Ct. App. 2011)).

¶18.    According to these requirements, BMW failed to show any new evidence was discovered. McFarland's initial complaint alleged that she believed her signature had been forged. Her signed and sworn affidavit submitted in response to the motion to compel

---

[7] The handwriting expert's affidavit was not submitted with BMW's motion for reconsideration. Instead, it was submitted as a supplementation to the motion approximately five days later with instruction for the court to "note the revision in Paragraph 6 of [the expert's] original [a]ffidavit."

arbitration also made clear that she believed her signature was forged. BMW and Hairston had every opportunity from the filing of McFarland's complaint to consult a handwriting expert and submit an affidavit disagreeing with the forgery allegation. Instead, BMW and Hairston waited until their motion to compel arbitration was denied and then attempted to introduce the idea of a handwriting expert in a Rule 59 motion.

¶19. BMW also alleged in the motion that it was at a "disadvantage . . . in providing facts about the transaction" because the sales manager who allegedly signed McFarland's contract on behalf of the dealership had died.[8] Additionally, BMW cited that Hairston was "under criminal indictment" and could not "give any type of sworn testimony as to the transaction as she could wa[i]ve her right to self incrimination." The only possible circumstance in which these allegations would garner a reversal of the trial court's denial is the presence of "manifest injustice." *See* M.R.C.P. 59. In the context of our abuse of discretion review, "manifest" is defined as "unmistakable, clear, plain, or indisputable." *Hickey v. Hickey*, 166 So. 3d 43, 51 (¶24) (Miss. Ct. App. 2014) (quoting *Lowrey v. Lowrey*, 919 So. 2d 1112, 1118 (¶21) (Miss. Ct. App. 2005)).

¶20. We find no injustice resulting from the denial of BMW's motion for reconsideration. The death of the sales manager and the indictment of Hairston had no bearing on whether BMW could contest McFarland's forgery claim with an expert involved in neither of those

---

[8] BMW also reiterated its argument that McFarland needed to prove her signature had been forged by clear and convincing evidence.

11

occurrences. The handwriting expert could have provided an affidavit long before the motion for reconsideration; instead, BMW chose to rely upon the "signed" agreement as its evidence that the agreement existed. The purpose for a motion for reconsideration is not to "rehash rejected arguments or introduce new arguments." *Point S. Land Tr. v. Gutierrez*, 997 So. 2d 967, 976 (¶24) (Miss. Ct. App. 2008) (quoting *LeClerc v. Webb*, 419 F.3d 405, 412 n.13 (5th Cir. 2005)). "Nor may it be used to resolve issues which could have been raised during the prior proceedings." *Id*. (quoting *Westbrook v. C.I.R.*, 68 F.3d 868, 879 (5th Cir. 1995)). We find no abuse of discretion of the trial judge's ruling denying the motion to reconsider.

## CONCLUSION

¶21. Upon review, we affirm the trial court's denial of both BMW's motion to compel arbitration and motion for reconsideration. There is no evidence that McFarland assented to any of the documents, namely the arbitration agreement upon which BMW and Hairston rely. We therefore affirm and remand the case to the trial court for further proceedings consistent with this opinion.

¶22. **AFFIRMED AND REMANDED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, McCARTY AND EMFINGER, JJ., CONCUR. SMITH, J., NOT PARTICIPATING.**